(No. 33469.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ROBERT EARL NOEL, Plaintiff in Error.

*Opinion filed September 23, 1955.*

MICHAEL O. GARD, of Peoria, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JAMES P. KELLSTEDT, State's Attorney, of Peoria, (FRED G. LEACH, GEORGE W. SCHWANER, JR., WILLIAM H. YOUNG, and JACK A. BRUNNENMEYER, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Robert Earl Noel, plaintiff in error, hereinafter referred to as the defendant, by this writ of error seeks a reversal of the judgment of conviction entered at the May term, 1954, in the circuit court of Peoria County.

The defendant, along with Walter Leroy Gibbs and Mickey Ray Noel, were jointly indicted for the crime of burglary and, each being separately represented by counsel, entered a plea of not guilty. A jury was selected and sworn to try the three defendants jointly but prior to the introduction of any testimony, a motion to withdraw a juror was made and allowed as to the codefendants Gibbs and Mickey Ray Noel and the indictment was stricken as to them with leave to reinstate. Counsel for defendant concurred in this procedure and no motion was made on his behalf for the withdrawal of a juror nor any other objection entered against the continuation of the trial by the jury as it was originally constituted. The defendant was found guilty and sentenced to the penitentiary for a term of not less than five nor more than ten years.

On this review it is defendant's contention that he was not proved guilty beyond a reasonable doubt. It thus becomes imperative that we review the salient proof as it was adduced on trial. On December 8, 1953, at around 1:20 A.M., a merchant policeman, deputy Raymond Kelpley, found the front door jammed at the K & W Supermarket, located at 2216 North University, in the city of Peoria; he heard pounding and hammering and it appeared to him that this was being done by more than one person, and without having personal knowledge of who was in the building, left to telephone the city police for assistance.

In response to a radio call, two sheriff's deputies, Earl Stevens, the patrol car driver, and deputy Thomas J. Chitwood, arrived at the market before the mechant policeman returned, and while in the patrol car, headed south on

University Street, officer Stevens observed three men running north from behind a van parked at the rear of the market building. He turned the patrol car in the street and followed them with head and spot lights on, across the store parking lot and a vacant lot, past a garage and across Loucks Avenue, then through a driveway to the entrance to a narrow gangway between two buildings, where officer Chitwood left the car, shot five or six times into the air, commanded, "Halt," and pursued all three men through the gangway. The defendant fell at a point ten feet from the exit of the gangway, and was captured by officer Chitwood. The other men ran in different directions, and were not apprehended. The codefendants were later arrested, after it was established that they had been with the defendant at a tavern in Peoria earlier that night. The defendant's car, with the motor running and no lights burning, was found parked between the buildings and by the garage in the 700 block on Loucks Avenue, at a point about 100 feet from the rear of the burglarized building. The driver of the patrol car, officer Stevens, testified that from the patrol car he could not recognize the men as they ran, but that he saw the defendant fall, then recognized him, and thereafter lost sight of the other men. On cross-examination, officer Chitwood testified that he never lost sight of the defendant from the time he was first observed until he was captured. Both officers identified the defendant as being the man officer Chitwood captured. When apprehended, the defendant had a bag of "Sea Breeze Butter Mints" candy in his topcoat pocket, and was wearing gloves. Officers Stevens and Chitwood identified the bag of candy, People's exhibit 1, and the gloves, People's exhibits 2 and 2-A, by the marks which they had put thereon when the same were taken from the defendant at the time of his arrest. On cross-examination officer Stevens stated he saw three stacks of the same kind of butter mint candy in the market that night.

Officer Stevens found the front door of the market pried open, the knobs broken off of two safes, and a meat cleaver, butcher knife, tire iron and wrench on the office floor. Lyle G. Kingsland, the store manager, noticed that the front door of the market building and the office door had been forcibly entered, and found meat cleavers, knives, skewers, and hooks on the office floor, the desk and file ransacked, and the knob and lock on the safe tampered with, but found nothing missing from the store. He considered the price mark on the bag of candy to be identical with the kind used in his store, and stated that he had the same kind of candy, in the same kind of bag, on sale in his store on December 8, but admitted on cross-examination that it was possible that other markets in the community used the same price mark and that it was probable that other stores in the city had the same kind of candy on sale at that time.

The defendant testified that he was unemployed and sometimes worked extra at a tavern; that he had been drinking excessively that evening, first at home, then in taverns; that, enroute to Silvio's, on North University, four blocks beyond Loucks Avenue, he stopped his car on University Street to examine a tire; that he put on work gloves he had had in the car since he had worked on a laboring job; that he walked to the rear of the car; that at that time he heard shouting and hollering and some firing of a pistol, and saw several people, three or four, whose identity was unknown to him, running directly toward him out of a gangway; that he didn't know the police were there or that a police car was in the area; that he was scared and started running way from them across Loucks Avenue; and that he stayed ahead of them and fell on the ground ten feet from the exit to the gangway, and lay there five or six seconds until officer Chitwood came running through the gangway, pounced on him, hit him in the back with a gun, handcuffed him, put him in

the car, questioned him, took him to the market, and then to the county jail. He stated he had never been in the K & W Supermarket prior to that time, and that earlier that evening he bought for his son the candy taken from him, but that he would not know the bag of candy if he saw it again, and that he could not remember where he had purchased it. The defendant testified on direct examination that he had pleaded guilty to a burglary and larceny charge in 1949 and that he was guilty of that crime, but that he was not guilty of the crime charged in this indictment. He entered into stipulations that he is 28 years of age, and that he was previously convicted and sentenced to serve one year in the Illinois State Penitentiary and was discharged after service of said sentence.

The defendant admits that he was chased, apprehended, and arrested, but submits that he was not one of the three men the officers first sighted, but that he found himself in the path of the fleeing individuals, was frightened, took flight ahead of or along with the fugitive group, fell and was seized.

Our attention has been directed to a few minor discrepancies in the testimony of officers Stevens and Chitwood. Suffice it to say that it was well within the jury's province to subscribe to the recitals of the prosecution rather than the fantastic version presented by the defendant. A fair analysis of the evidence appearing in the record clearly indicates that the jury's determination of guilt should not be disturbed.

The defendant further complains that the trial court committed reversible error in proceeding with a trial before a jury when a juror had been withdrawn and the indictment nollied as to his codefendants. It must be borne in mind that the jury that heard defendant's cause is the same as was selected and sworn to try defendant and codefendants. Although the record shows that there was a juror withdrawn, there was in reality none withdrawn. The

People were simply adopting a fictitious procedure, concurred in by counsel for all three defendants, the purpose of which was to permit the striking of the indictment as to Gibbs and Mickey Ray Noel to become legally effective and thus avoid the attachment of jeopardy. The defendant refers to a number of cases holding that an accused cannot consent to being tried by eleven qualified jurors and one unsworn, unimpanelled stranger. Clearly, such decisions are not helpful here, for in this case the jury was composed of twelve duly selected and sworn jurors.

The allowance of a motion to withdraw a juror does not discharge an individual juror unless and until he is called by name and ordered discharged. In such case the ancient fiction of the law is disregarded. If this rule is not adopted, the courts could not proceed to a final disposition of cases, based on joint indictments where the indictment is dismissed during the course of a trial as against one of the defendants, or where a verdict is directed in favor of any one of the defendants, or where one of the co-defendants dies during the trial. The fact that the defendants were jointly indicted does not mean that the defendants must be considered jointly for all purposes. One may be convicted, the others acquitted. Evidence may be admissible as to one and inadmissible as to the others. The court should not be compelled to discharge all code-fendants because one defendant has a right to be exonerated.

We do not find that the defendant has been deprived of a jury trial as assured him by our State and Federal constitutions.

We are convinced that the defendant is guilty, that he has had a fair trial and that no reversible error intervened.

*Judgment affirmed.*