People of the State of Illinois, Appellee, v. Sam DeStefano, Appellant.

Gen. No. 50,162.

First District, First Division.
November 8, 1965.
Rehearing denied November 26, 1965.

Julius Lucius Echeles, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant appeals from a judgment on a jury verdict, finding defendant guilty "of illegally offering to vote in manner and form as charged in the indictment." Defendant was sentenced to the penitentiary for a term of one to three years.

Defendant was tried on a two-count indictment. Count 1 charged that on April 2, 1963, defendant "committed the offense of illegal voting in that he knowingly offered to vote at the municipal election held in the City of Chicago, Cook County, Illinois, and in precinct 64 of Ward 36 of the City of Chicago when the said Sam DeStefano had been convicted of the offense of rape in indictment No. 45013 in the Criminal Court of Cook County, in the State of Illinois on December 23, 1927, and when the said Sam DeStefano thereafter had never received a certificate restoring his rights of citizenship from the governor or court entitled to grant such certificate, in violation of chapter 46, section 29–26 Ill Rev Stats 1961." Count 2 charged that on the same day the defendant "committed the offense of illegal voting in that he knowingly voted. . . ."

Section 29–26 of chapter 46—Elections (Ill Rev Stats 1961) provides:

> "If any person who shall have been convicted of bribery, felony or other infamous crime under the laws of any state, and who has never received a certificate restoring his rights of citizenship from the Governor or court entitled to grant such certificate, shall thereafter vote or offer to vote at any election or primary, he shall upon conviction thereof be adjudged guilty of a felony, and, for each and every offense shall be punished by imprisonment in the penitentiary for not less than two nor more than five years."

Although defendant had counsel of his own choosing, he acted pro se during the entire trial.

At the conclusion of an 11-day trial from November 16, 1964, to November 27, 1964, the case was given to the jury for its consideration and verdict. After deliberating for some time, the foreman of the jury informed the court, in open court and with the jury in the

jury box, that the jury was unable to reach a verdict. Thereupon the court ordered that a juror be withdrawn from the jury box, and the court declared a mistrial and excused the jury. Shortly thereafter, the court reconvened the jury, reopened the case, and received a verdict of guilty on Count 1. Judgment was entered on the verdict, and defendant was sentenced to the penitentiary. It is from this conviction defendant appeals.

Defendant's contentions are: (1) The court having declared a mistrial because of the announced inability of the jury to agree on a verdict, the subsequent order of court reopening the case and receiving a verdict as to one count was a nullity. (A) The prosecutor's communications with the jurors before the return of the so-called verdict contaminated the jury's findings. (2) The court erred in refusing to poll the jury upon demand by the defendant. (3) The Act under which defendant was indicted is unconstitutional as applied to the defendant. (4) The Act under which defendant was indicted was repealed without a saving clause before defendant was indicted. (5) There was insufficient evidence to justify the verdict. (A) No proof that defendant knowingly violated the law or that he had the requisite criminal intent. (1) The judge refused to instruct that knowledge was essential. (B) No proof that he "offered to vote." (C) No proof that a court did not restore defendant's rights. (6) Defendant was entitled to his discharge under the Four Term Act. (7) The court erred in failing to inquire about the prejudice of a juror who announced to another juror that "it will be all over in five minutes."

Initially, as defendant seeks reversal without remandment, we consider those contentions which, if considered valid, are sufficiently basic to require final judgment here.

▓ The first considered of these contentions is, "The Act under which defendant was indicted [or convicted] is unconstitutional as applied to the defendant."

Defendant asserts that *"knowledge* of the disability to vote was essential to the proof of the State's case." Defendant maintains that Lambert v. California, 355 US 225 (1957), is controlling on this point. In that case, a Los Angeles Municipal Code provided that any person who had been convicted of a felony was required to register with the police if he remained in the city for more than five days, and that failing to do so constituted a crime. The evidence shows that a Miss Lambert had previously been convicted of forgery and failed to register. Upon such proof, defendant was convicted and sentenced. During the course of her trial she attempted to prove she had no actual knowledge of the requirement that she register. Such offer was refused by the trial court. The United States Supreme Court held the ordinance to be unconstitutional as it applied to the defendant and stated (p 228):

"Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges."

Also, ". . . [A]ctual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. . . . Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process." (pp 229, 230.)

The State notes that in Lambert v. California, it was also said (p 228):

"But we deal here with conduct that is wholly passive—mere failure to register. It is unlike the commission of acts . . . . The rule that 'ignorance of the law will not excuse' . . . is deep in our law, as is the principle that of all the powers of local government, the police power is 'one of the least limitable.' "

394

From this the State argues the Lambert case was concerned with punishing passive conduct, and since the complained of actions of defendant were positive, the Lambert case does not apply here. We agree.

Pronouncements made in Thompson v. State, 9 SW 486 (Texas) (1888), are pertinent here:

"Upon the trial the court gave an instruction as follows: 'If the defendant had been convicted of an assault with the intent to murder, as alleged in the indictment in this cause, and if he knew at the time he so voted that he had been so convicted, such knowledge of his conviction would be equivalent in law to knowing himself not to be a qualified voter.' It is contended by counsel for defendant that said instruction is erroneous in principle, and that it is also upon the weight of evidence. We believe the instruction to be correct and unobjectionable. Ignorance of the law is no excuse for a violation of the law, . . . and no mistake of law excuses one committing an offense. . . . Everyone is conclusively presumed to know the law, both as to civil and criminal transactions. The law is administered upon the principle that everyone must be taken conclusively to know it, without proof that he does know it. . . . As the defendant knew the fact that he had been convicted of the offense of assault with intent to murder, it must be conclusively presumed that he knew the legal consequences of such conviction; That he knew that the law declared that offense to be a felony; and that the constitution and the law made one of the consequences of the conviction his disqualification to vote. He cannot be heard to deny such knowledge; and it was not necessary that it should be proved that he had such knowledge, because the presumption of law supplied and dispensed with such proof. . . . It seems to us that if we were to hold the law to be that the State must prove

that the defendant knew that the offense of which he had been convicted was a felony, and that such conviction disqualified him to vote, the effect would be that a conviction for illegal voting by persons convicted of felony could rarely be obtained, because it would be an exceptional case in which such proof could be made. Such a holding would not accord with our understanding of the spirit and reason of the law, and is not supported by any precedent to which we have been cited, or which we have been able to find." (pp 486–487.)

See, also, Gandy v. State, 86 Ala 20, 5 So 420, to the same effect.

██ Defendant also quotes the Fifteenth Amendment to the Federal Constitution:

"Section 1. The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude."

From this, defendant argues, "a convicted felon is no less a citizen of the United States. And although the Fifteenth Amendment was adopted after the Civil War primarily to insure the right to Negroes to vote in southern states, the plain language of the Amendment applies to the defendant here. His 'previous condition of servitude' in a penitentiary is held to bar his voting; but that is a condition prohibited by the Amendment."

Defendant further asserts, "The 13th Amendment provides, 'Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction.' Accordingly involuntary servitude relates to penal confinement. And the 15th Amendment forbids any State to deny the right to vote on account of a person's 'previous

condition of servitude.' . . . Nor is there any case that has decided squarely that it is not an unconstitutional abridgement of a citizen's right to vote to legislate against a felon from so doing."

In reply to this contention, the State cites Lassiter v. Northampton County Board of Elections, 360 US 45 (1959), where it is said:

"We do not suggest that any standards which a states desires to adopt may be required of voters. But there is wide scope for exercise of its jurisdiction. Residence requirements, age, previous criminal record (Davis v. Beason, 133 US 333, 345–347) are obvious examples indicating factors which a state may take into consideration in determining the qualifications of voters." (p 51.)

Also, Rice v. Elmore, 165 F2d 387, cert denied, 333 US 875, where the court said:

"The Fourteenth and Fifteenth Amendments were written into the Constitution to insure to the Negro, who had recently been liberated from slavery, the equal protection of the laws and the right to full participation in the process of government." (p 392.)

We believe the foregoing authorities indicate that defendant's contention that section 29–26, chapter 46, Ill Rev Stats 1961, the basis for the instant indictment, "is unconstitutional as applied to the defendant," is without merit.

Next considered is defendant's contention, "The Act under which defendant was indicted was repealed without a savings clause before defendant was indicted." Therefore, defendant asserts, "No law existed thereafter which made it a crime to 'offer to vote.' " Defendant was indicted in May, 1964, for an alleged offense committed April 2, 1963. The indictment charged a violation of section 29–26 of the Election Code (Ill Rev Stats 1961,

c 46). Article 29 of said Act was repealed without a saving clause on August 7, 1963, by Laws of 1963, p 2569, § 2.

■ The State argues the prosecution is valid under the general saving clause of the Construction of Statutes Act (Ill Rev Stats 1963, c 131, § 4). Defendant argues that People v. Tanner, 27 Ill2d 82, 188 NE2d 42 (1963), requires an "explicit saving clause" incorporating by reference section 4 of the Construction of Statutes Act, and "accordingly, it is clear that the statute under which defendant was indicted and convicted was repealed without a savings clause." We do not agree. In People v. Bilderback, 9 Ill2d 175, 137 NE2d 389 (1956), our Supreme Court considered the application of section 4 of the Construction of Statutes Act, and said (p 181):

> "Nowhere in the combination of circumstances out of which this problem arose is there a suggestion that the legislature was expressing its purpose that conduct which took place before the statutory change should no longer be criminal. No thought of a general pardon for those who had committed the offense here involved can be distilled from the circumstances of this legislative change. The case falls squarely within the terms of the Statutory Construction Act, and the judgment was correct."

We consider this statement applies here, notwithstanding the law under which defendant was indicted was repealed without replacement.

Defendant next contends "there was insufficient evidence to justify the verdict." Defendant again argues, "The State failed to prove the defendant had knowledge that he could not 'offer to vote.' No means existed by which a person convicted of a felony could avail himself of such knowledge, unless that fact were brought to his attention. Lambert v. California, 355 US 225." Defendant asserts the court refused defendant's instruc-

398

tions, which "related to the requirement that before the jury could find the defendant guilty, it had to find that the defendant's act was done with conscious intent to violate the law and that further 'knowledge of a material fact includes awareness of the substantial probability that such fact exists.' " He also states the court "refused to permit the defendant to prove through the wardens of the Illinois Penitentiary that no prisoner was ever told that he could not vote upon his release."

 We find no merit in any of the foregoing points. As defendant knew he had been convicted of the offense of rape, it must be conclusively presumed that he knew the legal consequences of such conviction. The rule that ignorance of the law is no excuse applies here. In People v. Becker, 179 Ill App 446 (1913), the court said (pp 451, 453) :

> "[T]he rule that ignorance of the law excuses no man applies with all its force to cases of the violation of the election laws; that if the voter is aware of a state of facts which disqualify him under the law and is ignorant of the law, he may be convicted of the crime of illegal voting. . . . We do not perceive any substantial difference between the question of intent, mistake of law, ignorance of law, and mistake of fact involved in this and in other criminal cases."

The record shows that the State established proof that defendant was convicted of a felony in 1927; that defendant on September 15, 1961, registered to vote by filling out an application and swearing "he was fully qualified to vote"; that on April 2, 1963, he signed an application for ballot and entered a voting booth on election day. The State also asserts, "The State did prove through a certified copy that a search of the certificate of Restoration records of the Secretary of State's Office failed to reveal that Sam DeStefano's

rights were restored by any Governor of the State of Illinois from the year of his conviction to the present. This is a proper method of proof. People v. Dolgin, 415 Ill 434." The State argues, "In the clearest sense of the word, the defendant 'offered to vote.' He took substantial steps toward the act of actually voting. He did everything required of a person in order to vote (except of course, receive restoration of his voting rights). An offer is a proposal to do a thing. Smith v. Illinois Valley Ice Cream Co., 20 Ill App2d 312."

Defendant argues, "The State failed to prove that the defendant 'offered to vote' as charged in Count 1. It proved, if it proved anything, that defendant 'voted' as charged in Count 2. But as to that count, the jury could not agree upon a verdict." Defendant further argues, "But even assuming that the State presented proper and sufficient evidence that the defendant was not restored by any governor, the record is entirely silent that defendant was not restored by any 'court entitled to grant such certificate' (of restoration). This is proof affirmative which the State was required to make under the language of the section under which defendant was indicted."

▮▮ The proof made by the State was sufficient to present the issues to the jury. It was not necessary for the State to prove "that defendant was not restored by any 'court entitled to grant such certificate.'" If defendant's "rights of citizenship" had been restored by any court, that fact was peculiarly within defendant's knowledge, and the averment that no court restored him is taken as true unless disproved by the defendant. People v. Prystalski, 358 Ill 198, 192 NE 908 (1934).

Defendant also contends that he was entitled to his discharge under the Four Term Act. The statute provides that "every person on bail or recognizance shall be tried by the court having jurisdiction within 120 days from the date defendant demands trial unless delay is occasioned

by the defendant, by a competency hearing, or by an interlocutory appeal." Ill Rev Stats, c 38, § 103–5(b), Code of Criminal Procedure 1963, effective January 1, 1964.

Defendant states he "was arrested on April 30, 1964, and appeared in court May 4, 1964 and continuously demanded trial on May 11, June 10, June 19, July 2, August 27. He should have been discharged in accordance with sec 103–5, chap 38, Ill Rev Stats 1963. He moved for a discharge on September 23, September 30, October 7, and on October 8. He was not put to trial until November 17, 1964."

The State replies, "The record clearly shows delays occasioned by the defendant." On May 25, 1964, defendant filed a motion for change of place of trial. This was denied on June 10, 1964. On July 2, 1964, defendant filed motions to dismiss the indictment, which were denied on August 27, 1964, and on September 23, 1964, defendant again moved to take the case out of Cook County, which motion was again denied. On September 30, 1964, a hearing was had on a motion of defendant for substitution of judges. This was denied. On October 7, 1964, defendant renewed his motions to dismiss the indictment and asked the court to consider the motions overnight and decide them on October 8, 1964, which request was granted. The trial commenced on November 17, 1964.

■ The foregoing motions made by defendant show that the failure to try defendant within 120 days was because of delays occasioned by the defendant, and therefore his "Four Term Act" contention is without merit. In People v. Hamby, 27 Ill2d 493, 190 NE2d 289 (1963), the court said (p 495):

"Where, however, the accused has sought and obtained a continuance, or agrees to a continuance, or in any manner causes delay in trial by his own action, the four-months period is renewed and starts

401

to run again from the date the delay occurred, or to which the cause was continued. . . . The motions to test the validity of the indictments in this case and the delay occasioned thereby were correctly charged to the defendant."

Finally, we reach defendant's determinative contentions that every act subsequent to the declaration of a mistrial was a nullity, and that it was error not to poll the jury on his request.

The record shows that the following occurred prior to the reception by the court of the guilty verdict.

"Whereupon at 10:45 P. M. the following proceedings were had:

'The Court: Mr. Foreman, have you reached a verdict?

The Foreman: No, your Honor, we haven't.

The Court: Does it look like you can come to a unanimous decision?

The Foreman: No, sir, it doesn't.

The Court: All right. Mr. Clerk, will you call the name of one juror.

The Clerk: Robert G. Arnold, will you step out of the jury box.

The Court: This Court declares a mistrial. You are all excused. You may go home.

Mr. Tuite: We are not objecting to their deliberating further.

The Court: He says they can't come to a unanimous verdict.

Mr. Tuite: I think the Foreman wants to say something.

Mr. McDonnell: Thank you, your Honor.

Mr. DeStefano: I thank all of you.

The Court: You are discharged.

Mr. DeStefano: May I speak?

Mr. Tuite: Let the record show the State objects to the mistrial.

Mr. DeStefano: Counsel for the Defense objects to the mistrial. We object to the mistrial.

(Whereupon, the following proceedings were had outside the presence and hearing of the jury:)

The Court: There is one more matter we have to take care of. One matter we have to dispose of is your contempt. I am citing you, again, for your conduct today during the course of the trial and your closing argument.

A Bailiff: The jury told me they've come to a verdict on one of the charges.

. . .

Mr. Tuite: The jury informed us they reached a verdict on one count and misunderstood the Court. They have told me.

The Court: Bring the jury back. Bring the jury back.

. . .

Mr. McDonnell: Objection to re-opening the case after a mistrial has been declared.

. . .

(Whereupon, the following proceedings were had in open court, within the presence and hearing of the jury:)

The Court: The jury has made a request to come back, and the case will be re-opened. Is that true, Mr. Foreman?

The Foreman: Yes, sir.

The Court: For what purpose?

The Foreman: We found the defendant guilty on one count.

The Court: Well, you failed to state that to me before.

The Foreman: You didn't ask me, sir.

The Court: I asked you if you reached a unanimous verdict. That meant either count.

The Foreman: I am sorry. I misinterpreted.

The Court: You mis-informed me? All right, give the verdict that you have arrived at to the Clerk. The Bailiff will pick it up. Please sit down over there where you belong.

Mr. DeStefano: They were near the jurors.

The Court: Did you reach this verdict before you came out the first time?

The Foreman: Yes, sir.

The Court: You were ready to deliver it to the Court, but you misunderstood me? Is that true?

The Foreman: Yes, sir.

Mr. McDonnell: Judge, please, your Honor—

The Court: Then, pass your verdict up to the Clerk.

The Bailiff: Your Honor, I left it on the desk in the jury room. Should I get it?

The Court: Go with the Bailiff and bring it in. It is obvious there has been a mistake here. I am correcting it.

Mr. DeStefano: When the jury was out here, the State's Attorney and other people were near them, your Honor. The jury is supposed to deliberate in a closed room. After they left the court room and other people got near them, and so forth, then they come back, sir. A mistrial was declared, sir.

The Court: All right, Mr. Foreman, will you deliver your verdict to the Clerk?

Mr. Clerk, see if the verdict is in order.

The Clerk: Yes, Judge, the verdict is in order.

The Court: All right. Read the verdict.

The Clerk: "We, the jury, find the defendant, Sam DeStefano, guilty of illegally offering to vote, in manner and form as charged in the indictment. We, the jury, further find that the defendant is now

404

fifty-five years of age." Signed by the Foreman and the eleven other jurors.

The Court: How about the other count? On the other count you are unable to reach a unanimous verdict?

The Foreman: Yes, your Honor.

. . .

Mr. McDonnell: You have declared a mistrial. It is not only illegal—

The Court: Make your argument after we have dismissed the jury.

Mr. DeStefano: I wish to poll the jury.

The Court: Are you able to come to a unanimous decision on the second count?

The Foreman: No, your Honor.

The Court: The jury is excused, then.

Mr. DeStefano: I thank you, anyway.' "

Obviously, the foregoing presented an unusual situation. Defendant argues the trial judge followed the procedure prescribed in Illinois for the declaration of a mistrial (People v. Noel, 6 Ill2d 391, 128 NE2d 908 (1955); People v. Miller, 55 Ill App2d 146, 204 NE2d 305 (1965)), and thereafter the jurors could not render a valid verdict.

The State argues the court properly corrected a mistake, and the trial judge had "a duty to vacate an order entered if changed facts or circumstances make the prior order unjust." (Richichi v. City of Chicago, 49 Ill App2d 320, 199 NE2d 652 (1964).) The State also cites People v. Powell, 99 Cal App2d 178, 221 P2d 117, where, after a mistrial, the trial court learned of a mistake and vacated his order declaring a mistrial and received a guilty verdict on one count. On review, it was held that the trial judge acted properly in vacating the mistrial and correcting the error.

The defendant points out that in People v. Powell, 99 Cal App2d 178, 221 P2d 117, all of the proceedings attend-

ing the reception of the guilty verdict occurred with the jury still in the box and, further, "at the defendant's request, 'the jury was polled and it appeared that the verdict was unanimous.' " Defendant further notes that in the Powell case it was argued the verdict was void because it was received after the jury had been discharged, and People v. Chong, 29 P 776, was cited in support. The reviewing court in the Powell case, in noting the cases differed factually, said (p 119):

> "For instance, in the Chong case the jury had left the box, had separated, had engaged in conversation with various persons, deeming they had been discharged and might therefore discuss the case, and it was held under such circumstances reversible error had been committed in thereafter re-assembling them and proceeding to receive and record a verdict. While it is true here that the court, laboring under the belief that the jury had not agreed on any verdict as to appellant, preliminarily announced its intention to discharge them, nevertheless the error was discovered before they had been permitted to leave the box and the court was therefore fully justified in rectifying, and, indeed, in the performance of its duties was required to rectify, the misunderstanding and receive the verdict which the jury had unanimously agreed upon. It often happens, due to the reluctance of jury members to speak out, that such misunderstanding as existed here will arise, and a trial court would be remiss in its duties if, before it lost control of a jury, it discovered that such a situation had developed and did not correct it."

██ ██ In the instant case, the misunderstanding by the foreman was most unfortunate, particularly after a lengthy and turbulent trial. However, the jury had left the box and returned to the jury room, they had engaged in conversations with a bailiff and an Assistant State's

Attorney, deeming that they had been discharged and might therefore discuss the case, and the court in effect had "lost control" of the jury before the court discovered that a misunderstanding had occurred which caused the discharge of the jury. The integrity of a jury verdict and its receipt and recordation in any jury trial must be above question, especially in a criminal case, where the interests of both the defendant and the public are involved. There are situations in which a trial court is fully justified in rectifying a misunderstanding by the jury and receiving a verdict which the jury had unanimously agreed upon, but we do not believe the circumstances portrayed here justified the receipt of the instant verdict.

We now consider defendant's contention that "for failure of the court to poll the jury upon demand, the judgment should be reversed." It affirmatively appears from the record that when the court received the verdict, defendant stated, "I wish to poll the jury." The record does not disclose any ruling by the court on this request of defendant, and it is not disputed by the State that the jury was not polled after the verdict was received. Defendant argues, "The law in Illinois requires the polling of the jury upon demand of the defendant. This procedure was established early in the judicial history of Illinois." Cases cited include Nomaque v. The People, 1 Ill (Breese) 145 (1825), where the court said, "The prisoner had a right to have the jurors polled."

The State argues that "Illinois has no Constitutional or statutory provision giving the defendant the right to poll the jury. The right, if any, which exists respecting the polling of a jury is from the common law," and "the Illinois cases cited in Appellant's brief all deal with sealed verdicts where it is sound to have the jury polled to ascertain whether the verdict read is the verdict signed and sealed earlier by the jury. . . . In the case of an open verdict, where the jury hears the verdict read in open

407

court as in this case and can dissent if the verdict read is not the verdict reached during deliberation, it would seem that no substantial right of the defendant is violated when the court does not poll the jury."

██ ██ The state further argues that as this point was not included in defendant's written motion for a new trial, "it is deemed to have been waived and therefore not subject to review." (People v. Touhy, 31 Ill2d 236, 240, 201 NE2d 425 (1964).) This is the general rule, but we think defendant's contention comes within the recognized exceptions which call for the use of this court's discretionary power to "consider errors that have not been properly preserved for review." See People v. Bradley, 30 Ill2d 597, 601, 198 NE2d 809 (1964) ; People v. Fleming, 54 Ill App2d 457, 203 NE2d 716 (1965) ; and the Code of Criminal Procedure (Ill Rev Stats 1963, c 38, § 121–9(a)), which provides:

> "(a) Insubstantial and Substantial Errors on Appeal.
> Any error, defect irregularity or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."

██ As to the right to poll the jury in general, an annotation in 49 ALR2d 619, divides the states into three categories: those where the right is absolute, those where it is forbidden, and those where it is viewed as discretionary. On the basis of the language in the case of Nomaque v. The People, ALR views Illinois in the first category. An extended discussion of the various authorities pro and con is unnecessary here. The circumstances attending the receipt of the instant guilty verdict demonstrate the importance of the polling of a jury. Even if the verdict had been properly returned, we consider the failure to poll the

jury, after an affirmative request so to do, to be reversible error.

Other contentions of defendant have not been considered because we believe that on a new trial the events upon which these contentions are based will not reoccur.

Because of the reversible errors which occurred in the receipt of the verdict and in the failure to poll the jury, the judgment of the Criminal Division of the Circuit Court of Cook County is reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

Reversed and remanded.

BURMAN, P. J. and KLUCZYNSKI, J., concur.