# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. McGhee*, 2012 IL App (1st) 093404

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VOLNEY McGHEE, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-09-3404 |
| Filed | January 24, 2012 |
| Rehearing denied | February 9, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The second-stage dismissal of defendant's postconviction petition was upheld, despite defendant's allegations of ineffective assistance of both his trial and appellate counsel, including appellate counsel's failure to raise on direct appeal the trial court's dismissal of the jury after the verdict was returned without conducting a poll as requested by defense counsel, since defendant failed to object to the trial court's failure to poll the jury, the evidence was not closely balanced, appellate counsel would not have prevailed on appeal if the issue had been raised under the prejudice prong of the plain-error doctrine, and under the second prong, the failure to poll the jury was not a structural error requiring automatic reversal but, rather, polling the jury is merely a procedural device and is not an indispensable prerequisite to a fair trial; furthermore, the State's request for its full costs of the appeal on the ground that defendant's petition was frivolous was denied where the petition was dismissed at the second stage and could not have been frivolous. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 99-CR-14723; the Hon. Clayton J. Crane, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Karen Munoz, and Colleen Morgan, all of State Appellate Defender's Office, of Springfield, for appellant. |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Manny Magence, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. Justices Cunningham and Harris concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a direct appeal of his conviction for murder, attempted murder, and aggravated discharge of a firearm, defendant Volney McGhee filed a postconviction petition, alleging denial of his constitutional right to effective assistance of trial and appellate counsel. The circuit court dismissed the petition at the second stage. We affirm.

¶ 2                                  I. BACKGROUND

¶ 3    Most of the issues that defendant raises require only limited discussion of the facts, so we will briefly summarize the background of this case and will refer to additional facts and testimony as necessary in our analysis.[1]

¶ 4    The victim, Melvin Thornton, was shot dead at a gas station around 1 a.m. Witnesses at trial testified that while the victim was waiting in line at the gas station, a red car drove slowly by while defendant leaned out of a rear window, staring at the car that the victim had been riding in. A passenger in the front seat of the red car was identified as a friend of defendant's. After driving by the gas station, the car flipped around and pulled into the opposite side of the station. Defendant got out of the red car carrying a gun and approached the car that the victim had been riding in. When defendant began to run toward the car, the driver of the car put the vehicle in reverse and attempted to flee, leaving the victim in the gas station parking lot. Defendant fired several shots at the fleeing vehicle and then turned toward the victim, who was standing close by. Defendant shot the victim in the face, and a second round struck the victim's thigh as his body fell to the ground. Defendant fled, but he was later arrested and was identified as the shooter in a lineup about three months after the murder.

¶ 5    Defendant presented an alibi defense at trial. Laura Higgs, defendant's wife's

---

[1]A detailed recitation of the testimony at trial is contained in our decision on defendant's direct appeal. See *People v. McGhee*, No. 1-03-0761 (2004) (unpublished order under Supreme Court Rule 23).

grandmother, testified that defendant, his wife, and their two children were staying overnight with her at her apartment on the night the victim was killed. Higgs testified that defendant arrived at the apartment around 11:30 p.m. and that she saw defendant asleep in a bedroom around 1 a.m., which was about the time of the murder. Higgs testified that she did not hear anyone leave the apartment that evening.

¶ 6        The jury found defendant guilty of murder, attempted murder, and aggravated discharge of a firearm. We affirmed on direct appeal, in which defendant raised a number of issues including reasonable doubt, ineffective assistance of counsel, and prosecutorial misconduct in closing arguments. See *People v. McGhee*, No. 1-03-0761 (2004) (unpublished order under Supreme Court Rule 23).

¶ 7        Defendant then filed the instant postconviction petition *pro se*, raising additional issues of ineffective assistance of trial and appellate counsel. The trial court appointed postconviction counsel for defendant, but the petition was dismissed on the State's motion at the second stage. The trial court found that, regardless of whether trial counsel's performance was deficient, defendant was not prejudiced by any of the alleged errors raised in the petition due to the overwhelming evidence against him. Defendant timely appealed.

¶ 8                                    II. ANALYSIS

¶ 9        The circuit court dismissed defendant's postconviction petition at the second stage of proceedings. At this stage, the State must either answer or move to dismiss the petition. See 725 ILCS 5/122-5 (West 2010). The question for the court at this stage is "whether the petition and any accompanying documentation make a substantial showing of a constitutional violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If the petition makes such a showing, then the petition advances to stage three, at which the circuit court holds an evidentiary hearing on the petition's claims. See 725 ILCS 5/122-6 (West 2010). We review the dismissal of a postconviction petition at the second stage *de novo*.

¶ 10        Defendant's petition is a broad ineffective assistance of counsel claim regarding the performance of both his trial and appellate counsel. Four of the claims are primarily directed at his trial counsel, but they also implicate his appellate counsel because they were not included among the ineffective assistance of counsel claims that defendant's appellate counsel raised on direct appeal. See *People v. Williams*, 209 Ill. 2d 227, 233 (2004) (noting that although the doctrine of *res judicata* ordinarily bars litigation of issues that were or could have been raised in a prior proceeding, such an issue may be raised in a postconviction petition if, among other things, "the waiver stems from the ineffective assistance of appellate counsel"). As to his trial counsel, defendant alleges ineffective assistance of counsel due to (1) failure to properly support defendant's alibi defense with additional witnesses and evidence, (2) failure to object to certain testimony, (3) failure to present expert testimony regarding the reliability of eyewitnesses, and (4) failure to challenge defendant's sentence as excessive. The fifth claim is directed solely at his appellate counsel for failure to raise on direct appeal the trial court's failure to poll the jury at the request of defendant after it returned its verdict.

¶ 11        Ineffective assistance of counsel claims are governed by the familiar standard of

*Strickland v. Washington*, 466 U.S. 668 (1984). See *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*). There are two prongs to the test: first, the defendant must show that counsel's performance was deficient, and second, the deficient performance must be prejudicial to the defendant. See *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). The performance prong is satisfied if "counsel's performance was objectively unreasonable under prevailing professional norms," and the prejudice prong is satisfied if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* at 496-97. The test is essentially the same for a claim of ineffective assistance of appellate counsel, in which the defendant "must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful." *Id.* at 497.

¶ 12    Appellate counsel is only required to raise meritorious issues on appeal (see *People v. Easley*, 192 Ill. 2d 307, 329 (2000)), so defendant's constitutional claims of ineffective assistance of appellate and trial counsel depend on whether his underlying substantive claims of error have merit. If they do not, then defendant's appellate counsel cannot be faulted for not raising them in the direct appeal and defendant's petition would accordingly fail to make the required "substantial showing" of a constitutional violation.

¶ 13                                    A. Failure to Poll the Jury

¶ 14    We will begin with defendant's argument that his appellate counsel was ineffective because appellate counsel did not raise on direct appeal the issue of the trial court's failure to poll the jury upon request, given that this is the most complex issue that defendant raises.

¶ 15    In every criminal trial, the defendant has the absolute right to poll the jury after it returns its verdict. See *People v. Rehberger*, 73 Ill. App. 3d 964, 968 (1979). This right has long been recognized in Illinois and is rooted deep in our common law. See, *e.g.*, *Nomaque v. People*, 1 Ill. 145, 150 (1825) ("The prisoner had a right to have the jurors polled: this right could not have been exercised where the presence of the jurors was dispensed with. *** In the present case, the verdict was not even sealed; it was liable to alteration, and besides, the court had no legal evidence that it was the verdict of the jury."); *Martin v. Morelock*, 32 Ill. 485, 487 (1863) ("Either party has the right to have the jury examined by the poll before the verdict is recorded."). The purpose of polling the jury is to ensure that the verdict is in fact unanimous. See *Rehberger*, 73 Ill. App. 3d at 968. There are two important points underlying the right to poll the jury. First, "[t]he finding of a jury does not become a verdict until it has been received, accepted by the court and recorded of record. [Citations.] In other words, a verdict is not final until pronounced and recorded in open court." *Rehberger*, 73 Ill. App. 3d at 968. Second, "[t]he opportunity for jurors to show their assent or dissent to a verdict is basic to our system which requires unanimity among the jurors since if any of the jurors dissents from the verdict, it cannot be recorded." *Id.*

¶ 16    There are several basic scenarios in which jury-polling errors can potentially occur, each of which requires a slightly different analysis. In one scenario, the court does not allow enough time between the return of the verdict and the dismissal of the jury for the defendant

-4-

to request a poll. See, *e.g.*, *People v. Wheat*, 383 Ill. App. 3d 234, 235-42 (2008) (trial court allowed no more than two seconds for the defendant to request a jury poll before discharging the jury, and defense counsel requested a poll immediately after the jury was discharged but while the jurors were still present in the courtroom). In another scenario, the defendant asks the court to poll the jury and, during the poll, a juror gives some type of ambiguous response. See, *e.g.*, *People v. McDonald*, 168 Ill. 2d 420, 461-63 (1995) (when asked the question, " '[W]as this and is this now your verdict,' " a juror responded, " 'Reluctantly, yes your Honor.' "); *People v. Herron*, 30 Ill. App. 3d 788, 789 (1975) (jury foreman responded, " 'It wasn't, but it is.' "). In a third scenario, the defendant timely requests a jury poll but the court dismisses the jury without conducting the poll. See, *e.g.*, *Rehberger*, 73 Ill. App. 3d at 968 (jury returned sealed, unanimous verdict on four out of six charges but deadlocked on remaining charges, and the trial court declared a mistrial but then entered judgment on the four charges 3½ months after the jury was discharged and without conducting a poll).

¶ 17    This case deals with the third scenario. After the jury returned its verdict, defense counsel stated, "I want them polled, Judge." The trial court acknowledged defense counsel's request and proceeded to thank the jurors for their service, but then dismissed the jury without conducting the poll. There is no indication in the record that a poll was ever conducted. In fairness to the trial court, the mistake appears to have been inadvertent and defense counsel never followed up on the request to poll the jury. Yet the mistake was made, and both defendant and the State agree that it was error for the trial court to fail to poll the jury upon defendant's timely request.

¶ 18    The dispositive question for this case, however, is what *kind* of error this is, and on this point the parties strenuously disagree. Defendant failed to object when the trial court dismissed the jury without conducting the poll and did not include this issue in his motion for a new trial, so his appellate counsel could only have raised the issue on direct appeal under the plain error doctrine.[2] See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (in order to preserve an issue for review, a defendant must both object at trial and include the alleged error in a written posttrial motion); see also *People v. McLaurin*, 235 Ill. 2d 478, 496 (2009) ("[D]efendant in the present case did not properly preserve his objections. Because [the defendant] has forfeited his claims, we review them only for plain error."). An error is reversible under the plain error doctrine only when:

> " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. [Citation.]'

---

[2]Notably, defendant does not argue that his trial counsel was ineffective for failing to preserve the issue for appeal. Had the error been preserved, appellate counsel could have addressed the issue as one of harmless error rather than plain error, which would have resulted in a different analysis and placed the burden on the State. See *McLaurin*, 235 Ill. 2d at 495.

The first step of plain-error review is determining whether any error occurred. [Citation.] ***

In plain-error review, the burden of persuasion rests with the defendant. [Citation.]" *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 19 Because both parties agree that an error occurred, the question is only whether defendant's claim might have been successful on direct appeal under either prong of the plain error doctrine. In his direct appeal, however, defendant raised some claims of ineffective assistance of trial counsel. When we evaluated the evidence against him in the context of the prejudice prong of *Strickland*, we found that the evidence was not closely balanced and defendant was accordingly not prejudiced by any alleged error. See *People v. McGhee*, No. 1-03-0761, order at 13 (2004) (unpublished order under Supreme Court Rule 23). Defendant's appellate counsel would therefore have been unsuccessful had the jury-polling issue been raised on direct appeal under the first prong of the plain-error doctrine. See *People v. White*, 2011 IL 109689, ¶ 133 ("[T]he closely-balanced-evidence prong of plain error is similar to an analysis for ineffective assistance of counsel based on evidentiary error insofar as a defendant in either case must show he was prejudiced.").

¶ 20 Defendant therefore could only have succeeded on this issue on direct appeal if the error falls under the second prong of the plain-error doctrine. Under this prong, "[p]rejudice to the defendant is presumed because of the importance of the right involved, regardless of the strength of the evidence." (Internal quotation marks omitted.) (Emphasis omitted.) *Thompson*, 238 Ill. 2d at 613. The supreme court has equated the second prong of the plain-error doctrine with structural error, which is "a systemic error which serves to erode the integrity of the judicial process and undermine the fairness of the defendant's trial." (Internal quotation marks omitted.) *Id.* at 613-14 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009)).

¶ 21 The question, then, is whether the trial court's failure to poll the jury on defendant's request is the kind of error that mandates reversal regardless of whether defendant was prejudiced by the error. It does not appear from our own research or the briefs of the parties that this question has previously been addressed in this context, so we treat it as a question of first impression. Even so, the supreme court analyzed a similar question in *Glasper* and *Thompson*, which we take as our guides for this case. In *Glasper*, the supreme court considered whether a trial court's failure to question the venire pursuant to the version of Illinois Supreme Court Rule 431(b) (eff. May 1, 1997) then in effect was a structural error. See *Glasper*, 234 Ill. 2d at 189. Under the now-defunct version of Rule 431(b) and the supreme court's ruling in *People v. Zehr*, 103 Ill. 2d 472 (1984), the trial court was required to question the venire regarding the four *Zehr* principles only if requested to do so by the defendant. See *Glasper*, 234 Ill. 2d at 189. The supreme court concluded that the trial court's failure to comply with Rule 431(b) was not a structural error and was therefore subject to harmless-error review. See *id.* at 199. The supreme court came to the same conclusion in *Thompson* when it considered the amended version of Rule 431(b), which mandated that the trial court question the venire regarding the four *Zehr* principles regardless of whether the defendant requested it. See *Thompson*, 238 Ill. 2d at 605-07; see also *id.* at 614 ("Unlike the preamended rule requiring questioning only upon the defendant's request, the amended rule

imposes a duty on trial courts to perform the questioning in every criminal case tried by a jury.").[3]

¶ 22    The supreme court's reasoning in both *Glasper* and *Thompson* is highly instructive. The supreme court noted in *Glasper* that there are only " 'a very limited class of cases' " in which an error has been deemed structural. (Internal quotation marks omitted.) See *Glasper*, 234 Ill. 2d at 198 (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)); see also *Thompson*, 238 Ill. 2d at 609 (noting that structural errors include "a complete denial of counsel, trial before a biased judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable doubt instruction"). Unlike other errors that had previously been deemed structural, the supreme court observed that Rule 431(b) was a rule of the court rather than a fundamental right or other constitutional protection, and "[t]he violation of a Supreme Court Rule does not mandate reversal in every case." *Glasper*, 234 Ill. 2d at 193, 198; see *Thompson*, 238 Ill. 2d at 609.

¶ 23    Perhaps most importantly, the supreme court highlighted the distinction between the procedural requirement of questioning the venire pursuant to Rule 431(b) and the fundamental prohibition against a defendant being tried by a biased jury. The supreme court emphasized that although "trial before a biased jury is structural error subject to automatic reversal, failure to comply with Rule 431(b) does not necessarily result in a biased jury. Rule 431(b) questioning is simply one way of helping to ensure a fair trial and impartial jury. *** Although compliance with Rule 431(b) is important, violation of the rule does not necessarily render a trial fundamentally unfair or unreliable in determining guilt or innocence." *Thompson*, 238 Ill. 2d at 610-11; see also *id.* at 614 ("A finding that defendant was tried by a biased jury would certainly satisfy the second prong of plain-error review because it would affect his right to a fair trial and challenge the integrity of the judicial process. Critically, however, defendant has not presented any evidence that the jury was biased in this case."). There are consequently two related but different rights at issue in this kind of situation: the substantive right to be tried by a fair and impartial jury and the procedural right to have the venire questioned pursuant to Rule 431(b). Only errors regarding the former, not the latter, require automatic reversal without consideration of prejudice to the defendant.

¶ 24    The supreme court's reasoning in *Thompson* and *Glasper* is directly analogous to this case. Similarly to those cases, there are two related but distinct rights at issue here. The first

---

[3]Although the issue in both *Glasper* and *Thompson* was essentially the same, the procedural posture of the cases was slightly different. In *Glasper*, the defendant had preserved the error, so the dispositive question was whether the error was subject to harmless-error review or required automatic reversal because it was structural. See *Glasper*, 234, Ill. 2d at 185-86. In *Thompson*, the defendant failed to preserve the error, and the supreme court ultimately applied the plain-error doctrine. See *Thompson*, 238 Ill. 2d at 605, 611. See generally *McLaurin*, 235 Ill. 2d at 495 ("[W]here the defendant has made a timely objection and properly preserved an error for review, the reviewing court conducts a harmless-error analysis in which the State has the burden of persuasion with respect to prejudice. [Citation.] However, where the defendant fails to make a timely objection and therefore forfeits review, the reviewing court will examine the record only for plain error.").

is a defendant's subtantive right to a unanimous verdict. As we have already noted, this right is so basic to our legal system that a nonunanimous verdict cannot be recorded. See *Rehberger*, 73 Ill. App. 3d at 968. Like the right to a trial by an unbiased jury, the right to a unanimous verdict is among the most fundamental of rights in Illinois. See *People v. Strain*, 194 Ill. 2d 467, 475 (2000) (noting that the right to trial by jury guaranteed under article I, section 13, of the Illinois Constitution of 1970 includes "the right to have the facts in controversy determined, under the direction and superintendence of a judge, by the unanimous verdict of twelve impartial jurors who possess the qualifications and are selected in the manner prescribed by law" (internal quotation marks omitted)). We may safely assume then, without deciding, that a conviction based on a nonunanimous verdict is an error that would require automatic reversal under the second prong of the plain-error doctrine.

¶ 25    But that is not what happened in this case. As in *Thompson* and *Glasper*, there is a second, procedural right at issue. The supreme court in those cases found that, rather than being an indispensable part of a fair trial, a defendant's right to a Rule 431(b) inquiry at issue was merely a procedural device promulgated by supreme court rule that aids in the selection of an impartial jury. See *Thompson*, 238 Ill. 2d at 614 ("Rule 431(b) questioning is only one method of helping to ensure the selection of an impartial jury. [Citation.] It is not the only means of achieving that objective."). Similarly, the requirement that the trial court poll the jury upon request is a common-law rule that is designed to help ensure that the jury's verdict is unanimous, but it is not the sole means of ensuring a unanimous verdict. Other procedural requirements exist; for example, the requirement that the jurors individually sign the verdict form. Like questioning the venire under Rule 431(b), polling the jury is merely a procedural device that helps to ensure that the jury's verdict is unanimous, but it is not an indispensable prerequisite to a fair trial.

¶ 26    In light of the supreme court's analysis in *Thompson* and *Glasper*, we must conclude that polling the jury on request, while mandatory, is not so fundamental that the failure to do so affects the fairness of a defendant's trial and challenges the integrity of the judicial process. *Cf. id.* at 615. Although some evidence that the verdict was not unanimous could potentially satisfy the second prong of the plain-error doctrine, defendant in this case has not offered us any evidence that the verdict was not unanimous other than the trial court's failure to poll the jury. The record is bare of any indication to the contrary, and in fact not one but three separate guilty verdict forms, one for each count, were signed by all 12 jurors. Without more, defendant cannot meet his burden of persuasion and the second prong of the plain-error doctrine cannot excuse his failure to preserve this issue.

¶ 27    In arguing for a contrary result, defendant relies on several cases that we will address briefly. In *People v. Townsend*, 5 Ill. App. 3d 924 (1972), the jury returned a sealed verdict, but the verdict was not opened and read in court until after the jury had been dismissed. See *id.* at 925. We reversed, noting that "[t]here is no evidence in the record to substantiate that the defendant or his counsel ever agreed to the sealed verdict or to its return other than by the jury." *Id.* The dispositive fact in *Townsend* is that the verdict was returned outside of the presence of the jury, which as we noted above precludes the verdict from being recorded. See *Rehberger*, 73 Ill. App. 3d at 968. Such a scenario did not occur in this case, so *Townsend* is unhelpful.

¶ 28      Also inapposite for the same reason is *Rehberger*, 73 Ill. App. 3d at 969. Although in that case we did discuss the defendant's inability to poll the jury, the dispositive fact in *Rehberger* was that "the verdicts on the charges upon which the jurors reached agreement were never pronounced in open court in the presence of the jurors either at the conclusion of jury deliberations or before judgments were entered 3½ months late. *** In short, there were no final verdicts upon which the court could enter judgments." *Id.* Unlike *Rehberger*, the verdict in this case was read in front of the jury.

¶ 29      Defendant also relies on *People v. DeStefano*, 64 Ill. App. 2d 389 (1965). In that case, the jury declared that it could not reach a verdict and the trial court declared a mistrial. After the jury was dismissed, however, it was discovered that the jury had apparently reached a verdict on one count. The court recalled the jury and retrieved the verdict form from the jury room, which had been left unattended. The jury read a verdict of guilty on one count and defense counsel asked to poll the jury, which the trial court failed to do. See *id.* at 402-05. We reversed, basing our decision not only on the trial court's failure to poll the jury but also on the extraordinary irregularities surrounding the return of the verdict. See *id.* at 408-09.

¶ 30      The facts in *DeStefano* are highly unusual and are distinguishable from this case. Unlike this case, there was ample evidence in the record in *DeStefano* that raised questions about the unanimity of the verdict. Not only did the jury declare that it was deadlocked moments before it was released, the jurors mingled with members of the gallery and the prosecutors in the courtroom before they were recalled. Moreover, the written jury verdict form was apparently left unsealed and unattended in the jury room outside of the presence of the jurors and the bailiffs. See *id.* at 402-05. Including the trial court's failure to poll to jury on request in addition to the other facts, *DeStefano* presented a situation in which serious questions were raised about the unanimity of the verdict, which required reversal for a new trial under the plain-error doctrine. See *id.* at 408. Unlike *DeStefano*, in this case there is only the failure to poll the jury on request, which is a significantly different situation.

¶ 31      The last case that defendant relies on is *People v. Wheat*, 383 Ill. App. 3d 234 (2008). In *Wheat*, after the jury returned its verdict, the trial court dismissed the jury without providing the defendant with an opportunity to request a jury poll. Defense counsel requested a poll immediately after the trial court dismissed the jury, but the trial court denied the motion yet continued to speak to the jury for about another minute. See *id.* at 235-37. The appellate court found that the trial court had erred by denying the defense motion to poll the jury and reversed for a new trial. See *id.* at 242.

¶ 32      Although defendant is correct that *Wheat* is on point factually, there is an analytical issue that *Wheat* did not fully explore. After determining that the trial court erred by failing to poll the jury, the court in *Wheat* summarily reversed without engaging in any sort of harmless- or plain-error review. See *id.* There are no other facts mentioned in *Wheat* that might indicate the verdict was not unanimous, and in fact *Wheat* nowhere makes clear whether the polling issue was even preserved. Crucially, *Wheat* appears to assume that the failure to poll the jury on request is by itself a structural error that requires reversal without further analysis. See *id.* *Wheat* cites only to *DeStefano*, which as we have already mentioned is not useful in this situation due to its extraordinary facts and which likewise contains no harmless- or plain-error analysis. This is in stark contrast to *Glasper*, where the supreme court conducted an

extensive analysis on the pre-amendment version of Rule 431(b), which is in all important procedural respects indistinguishable from the jury-polling requirement, yet found that a Rule 431(b) error was *not* structural and was instead amenable to harmless-error review. *Thompson* similarly contained an extensive analysis of the second prong of the plain-error doctrine. Because there does not appear to be a reasoned basis for *Wheat*'s rule of automatic reversal in the event that the trial court merely fails to poll the jury on request, we must respectfully decline to follow it.

¶ 33    Based on our analysis above, we must conclude that the trial court's failure to poll the jury on request does not require reversal under the second prong of the plain-error doctrine. Given that the trial court's failure to poll the jury was not preserved and defendant could not carry his burden under either prong of the plain-error doctrine, defendant's appellate counsel cannot be faulted for failing to raise the issue in defendant's direct appeal. Defendant was therefore not denied effective assistance of appellate counsel in his direct appeal.

¶ 34                          B. Failure to Support the Alibi Defense

¶ 35    Defendant also argues that his trial counsel was ineffective for failing to properly bolster his alibi defense. The only witness to testify on defendant's behalf was Laura Higgs, defendant's wife's grandmother, who as defendant himself concedes was not a convincing witness. Higgs claimed that she specifically remembered that defendant stayed with her on the night of the murder because it was his birthday, but when pressed she was unable to recall the birthday of defendant's wife or, more damagingly, her full name. Defendant maintains that defense counsel failed to present additional alibi evidence and witnesses and failed to properly cross-examine prosecution witnesses.

¶ 36    As defendant acknowledges, "[t]here is a strong presumption that trial counsel's actions were the result of trial strategy rather than incompetence, and a court of review, therefore, will not second-guess decisions which involve counsel's discretion or strategy." *People v. Humphries*, 257 Ill. App. 3d 1034, 1041 (1994); *id.* at 1045 ("The decision to pursue a given line of defense at trial is a tactical one."); see also *People v. Segoviano*, 189 Ill. 2d 228, 248 (2000) ("Counsel has the ultimate authority to direct trial strategy and we will generally not sustain a claim of ineffectiveness of counsel based on inadequate trial strategy except where counsel entirely fails to conduct any meaningful adversarial testing." (Internal quotation marks omitted.)). The complete failure to investigate a viable defense, however, can be objectively unreasonable and support an ineffective assistance claim. See, *e.g.*, *People v. Alfaro*, 227 Ill. App. 3d 281 (1992) (postconviction petition in which defendant claimed that trial counsel failed to investigate viable entrapment defense).

¶ 37    One important piece of evidence presented at trial that linked defendant to the murder was the fact that he owned a red, four-door 1995 Chevrolet Cutlass, a car that fits the description of the vehicle that witnesses saw him riding in at the murder scene. In his postconviction petition, however, defendant presented an affidavit from his wife in which she attested that the vehicle was inoperable at the time of the murder due to a car accident that she had been in three days before. Defendant also included the affidavit of a tow truck driver who retrieved the vehicle and a copy of the towing receipt. Defendant's wife attested

that she did not recover the vehicle for several weeks, and she also included repair receipts for the vehicle.

¶ 38   The problem with defendant's argument is that the record demonstrates that, far from failing to investigate, trial counsel was fully aware of this evidence and more. As part of required pretrial discovery from defense counsel for defendant's alibi defense, the State received copies of the documentation related to defendant's vehicle. The State investigated the issue, but found that the towing receipt number was not in the proper sequence, the writing on the tow receipt did not appear to be that of the tow company owner, and the writing and signature on the repair receipt were not that of the repair shop owner. All of this information was disclosed to defense counsel before trial. Contrary to defendant's argument, the record is clear that not only did defense counsel thoroughly investigate defendant's alibi defense but also made a deliberate choice not to present evidence regarding defendant's vehicle because of its questionable validity. We see no reason to question defense counsel's decision on this matter of trial strategy.

¶ 39   Defendant also argues that defense counsel failed to properly cross-examine and impeach one of the eyewitnesses during the trial. Ebony Pruitt testified that the car that defendant was riding in at the time of the shooting had a rear spoiler. There was some evidence presented at trial that defendant's car did not have a spoiler, but Pruitt was not confronted about this apparent disparity. Defendant argues that his counsel was ineffective for failing to follow up on this point.

¶ 40   The record demonstrates that Pruitt was heavily cross-examined by defense counsel, in particular about her ability to observe the scene and her consumption of alcohol preceding the murder. Among other things, it was revealed that Pruitt saw defendant's vehicle at the police station parking lot when she arrived in June for the lineup. At that time, she was uncertain whether it was the exact same vehicle that she had seen at the crime scene. In fact, she testified that she was uncertain about the make and model of the car, other than that it was red and had a rear spoiler. The other eyewitness, Michael Hobson, who was the driver of the car that the victim had been riding in, identified a picture of defendant's car as the vehicle. Defendant argues that this conflict calls Pruitt's testimony into question and that she could have been further impeached had she been confronted about the spoiler.

¶ 41   Although probative, the spoiler issue is collateral to the material question of whether defendant was the shooter. Both Pruitt and Hobson identified defendant, and Hobson testified that he recognized defendant from prior encounters. (In fact, the evidence indicated that Hobson was actually defendant's intended target on the night of the murder.) Moreover, it was never conclusively established at trial that the red car at the scene was in fact defendant's Oldsmobile, and it is possible that the red car belonged to someone else. Given the extensive cross-examination of Pruitt in the record and the collateral nature of the spoiler issue, defense counsel's choice not to pursue the issue is one of legitimate trial strategy.

¶ 42   Defendant's last argument on this subject is that defense counsel should have presented his wife at trial in support of his alibi defense, instead of or in addition to her grandmother. As with the other evidence and contrary to defendant's argument that counsel failed to investigate this witness, however, the record demonstrates that defense counsel spoke to

defendant's wife prior to trial and was aware of the substance of defendant's wife's proposed testimony yet chose not to have her testify. Also as with the other evidence, the decision of whether to call a particular witness is one of trial strategy. See *People v. West*, 187 Ill. 2d 418, 432 (1999). There is nothing in the record that causes us to question defense counsel's strategic choice not to call defendant's wife, particularly when defense counsel was aware of her potential testimony and had Higgs available to support the alibi defense instead.

¶ 43 There is one final observation that we must make. Defendant argues that defense counsel's choice on this point was unreasonable because, according to defendant, defense counsel must have refused to call defendant's wife solely because she was related to him, which is a fact that she could potentially be impeached with on grounds of bias. Not only is this assumption about defense counsel's reasons speculative and unsupported by the record, the only case that defendant cites for this proposition is *People v. Timms*, 59 Ill. App. 3d 129 (1978). Yet not only does *Timms* not stand for this proposition, it has nothing to do with ineffective assistance of counsel in general, much less the kind of failure to investigate that defendant claims happened in this case. In *Timms*, the trial court refused to grant defense counsel a one-day continuance in the middle of trial in order to secure the attendance of three alibi witnesses who were related to defendant. See *id.* at 134-35. We found this to be an abuse of discretion by the trial court and reversed, and we expressly did not reach the remaining issues on appeal. See *id.* at 137. *Timms* accordingly has no bearing on the ineffective assistance of counsel issues that defendant raises here, and we cannot fathom why he would support his argument on this point solely with that case.

¶ 44                                C. Failure to Object

¶ 45 Defendant next argues that his trial counsel was ineffective for failing to object (1) when a witness was presented with a photograph of the lineup in which defendant was identified, and (2) when a witness testified about her past military service.

¶ 46 About three months after the murder, Hobson and Pruitt were separately brought in to view a lineup and each independently identified defendant as the shooter. A photograph was taken of this lineup, and Hobson later placed his initials on the photograph above defendant's head in order to indicate the person whom he had identified as the shooter. At trial, this same photograph was shown to Pruitt when she recounted the lineup procedures, and she identified the photograph as an accurate reflection of the lineup and confirmed that she had identified defendant, the second person in the lineup, as the shooter. According to defendant, Pruitt's identification of defendant was therefore tainted because "the State showed Pruitt a photograph which indicated [defendant] was the person she *should claim* was the shooter." (Emphasis added.)

¶ 47 Although defendant is correct that suggestive lineup procedures have long been held to be impermissible (see *Foster v. California*, 394 U.S. 440 (1969)), that is not what happened here. Defendant does not challenge the lineup procedure itself but rather takes issue with Pruitt's in-court testimony. The problem is that, as defendant neglects to mention in his brief, the record is clear that Pruitt identified defendant in court and recounted her emphatic identification of defendant during the lineup *before* she was shown the initialed photograph

-12-

by the State. There is simply nothing for the photograph to taint because Pruitt had already testified to the material issue of the identification of the shooter, and there is nothing in the record that indicates Pruitt's identification might have been tainted. There was accordingly no reason for counsel to object.

¶ 48　　The other incident that defendant complains of also occurred during Pruitt's testimony. Pruitt testified that she had been an active-duty Marine for five years and had been honorably discharged. Defendant claims that this information amounted to the State improperly bolstering the credibility of one of its key eyewitnesses and that his counsel was ineffective for failing to object.

¶ 49　　Defendant relies entirely on *People v. Roman*, 323 Ill. App. 3d 988, 998-99 (2001), in which we held that a police officer's testimony that he had received a medal for valor was inadmissible hearsay and irrelevant to the question of defendant's guilt. *Roman* relied on the federal case of *United States v. Nazzaro*, 889 F.2d 1158 (1st Cir. 1989), for the proposition that awards and commendations of a witness are inadmissible. See *Roman*, 323 Ill. App. 3d at 998. Pruitt did not, however, testify about any awards or commendations that she received during her military service. Instead, she mentioned her military service as part of her general background at the beginning of her testimony, which is information that is commonly provided by nearly every witness in every case. *Cf.*, *e.g.*, *People v. Rhodes*, 386 Ill. App. 3d 649, 656-57 (2008) (noting that "[the witness's] job [as defendant's parole officer] at the time of trial was the sort of background information that every witness provides; thus, an objection to [the witness's] preliminary testimony that he was a parole officer would not have succeeded."). Moreover, Pruitt's mention of her military service was brief and it was neither pursued nor mentioned during closing arguments by the State. There was no reason for defense counsel to object.

¶ 50　　However, Pruitt's military service was mentioned numerous times during the trial by defendant's *own* counsel on cross-examination and during closing arguments in an apparent attempt to discredit her as a witness. Defense counsel brought up Pruitt's service at least twice during cross-examination, once by asking whether she had seen people shot before, and once by asking whether she had been trained by the military to call police immediately after an incident in order to provide information. Defense counsel's point behind these questions, which was elaborated on in closing argument, was that Pruitt was not a reliable eyewitness because of her failure to remain on the scene and apparent lack of an emotional reaction to the murder. Even if we were to consider Pruitt's background to be inadmissible, which we do not, the party responsible for emphasizing it in front of the jury was defendant, not the State. See *People v. Patrick*, 233 Ill. 2d 62, 77 (2009) (regarding the doctrine of invited error). There is a possible argument to be made that defense counsel could be deemed ineffective on that ground, although this would likely be difficult to sustain given the leeway given to attorneys in their strategic choices. Regardless, that is not the argument that defendant makes here. Defendant maintains only that his counsel was ineffective for failing to object when the State first elicited the fact of Pruitt's military service. An objection would have failed, so defense counsel cannot be faulted for not making one.

¶ 51              Failure to Present Expert Testimony Regarding Eyewitnesses

¶ 52      Defendant next argues that his trial counsel was ineffective for failing to present expert testimony on the reliability of eyewitness identification. Defendant's petition included an affidavit from Dr. Geoffrey Loftus, who attested that he would have testified at trial about the influence of memory and perception on eyewitnesses. The case against defendant depended on the testimony of two eyewitnesses, so defendant argues that his counsel should have presented Dr. Loftus' testimony in order to explain to the jury important points about the potential for misidentification.

¶ 53      The efficacy of eyewitness identification testimony and current safeguards regarding its reliability is one of the most cutting-edge topics in modern criminal procedure, and the law is rapidly evolving. For example, the New Jersey Supreme Court recently issued a landmark ruling on the subject that significantly changed the framework for evaluating the reliability of eyewitness testimony in that state (*State v. Henderson*, 27 A.3d 872 (N.J. 2011)), and the United States Supreme Court recently considered the subject under the federal Constitution in a similar case (*Perry v. New Hampshire*, ___ U.S. ___, 2012 U.S. LEXIS 579 (2012)).

¶ 54      Regardless of how the law in this area may change in the future, however, the current law in Illinois is clear on two critical points. First, as we have already mentioned, trial counsel has broad leeway in deciding whether to call a particular witness or to pursue a given strategy. See *West*, 187 Ill. 2d at 432; *People v. Palmer*, 162 Ill. 2d 465, 476 (1994) (noting that "counsel's strategic choices are virtually unchallengeable"). Second and perhaps more importantly, our supreme court has at least twice previously considered and rejected arguments along these lines. See *People v. Enis*, 139 Ill. 2d 264, 285-91 (1990) (*Enis I*) (direct appeal); *People v. Enis*, 194 Ill. 2d 361, 391-93 (2000) (*Enis II*) (appeal on postconviction petition). The appellate court has also had the opportunity to consider the subject several times. See generally, *e.g.*, *People v. Aguilar*, 396 Ill. App. 3d 43, 50-55 (2009); *People v. Allen*, 376 Ill. App. 3d 511, 520-25 (2007); *People v. Tisdel*, 338 Ill. App. 3d 465, 467-68 (2003). As these cases have noted, the trend in Illinois is to preclude expert testimony on the reliability of eyewitness identification on the ground that it invades the province of the jury as trier of fact. See, *e.g.*, *Enis I*, 139 Ill. 2d at 286-87 (citing cases). The supreme court has also cautioned against "the overuse of expert testimony" and declared that it is "concerned with the reliability of eyewitness expert testimony [citations], whether and to what degree it can aid the jury, and if it is necessary in light of defendant's ability to cross-examine eyewitnesses." *Id.* at 289.

¶ 55      *Enis I* and *II* are fatal to defendant's argument, though defendant neglects to mention them in his brief. Although *Enis I* was decided over 20 years ago and, as we mentioned, there have been many changes in the science and law of eyewitness identification in the interim (but see *Enis I*, 139 Ill. 2d at 286-87 (noting that other jurisdictions began to allow expert testimony on the subject in the preceding 10 years)), Illinois continues to reject, at least in practice, expert testimony on the reliability of eyewitnesses. We are unaware of, and defendant has not offered, any Illinois cases in which an attorney has been deemed ineffective for failing to offer, or a trial court has been found to have abused its discretion for refusing to allow, expert testimony on this subject. *Cf. Enis I*, 139 Ill. 2d at 290 (no abuse of discretion); *Enis II*, 194 Ill. 2d at 393 (finding that trial counsel was not ineffective for

failing to seek additional expert opinions on the reliability of eyewitness identification); *Aguilar*, 396 Ill. App. 3d at 50-55; *Tisdel*, 338 Ill. App. 3d at 467-68. But see *Allen*, 376 Ill. App. 3d at 526 (reversing as an abuse of discretion the trial court's decision to preclude eyewitness expert testimony due to the trial court's "failure to conduct a meaningful inquiry" into the proposed expert testimony, but noting that "[w]e express no opinion on whether the trial court on remand should allow any part of [the expert testimony] to be heard by the jury"). We do observe, however, that the supreme court does not seem to have come to a definitive conclusion on whether expert testimony on this subject is categorically inadmissible. See *Enis II*, 194 Ill. 2d at 393 n.1 ("We have assumed, for purposes of evaluating defendant's post-conviction claim, that Dr. Fulero's testimony regarding problems associated with cross-racial identifications would have been properly admitted at trial. We express no opinion, however, as to whether such expert testimony generally aids the trier of fact in reaching its conclusion."). Yet unless and until the supreme court decides to revisit this issue, we must conclude that it was not unreasonable for defense counsel to decline to present expert testimony regarding the reliability of eyewitness identification.

¶ 56                                         E. Failure to Challenge the Sentence

¶ 57       Finally, defendant argues that his trial counsel was ineffective for failing to file a postsentencing motion attacking his sentence. The trial court sentenced defendant to concurrent terms of 40 and 30 years in prison, which defendant argues was excessive. Defendant acknowledges that he has several prior felony convictions, including for possession of a controlled substance, unlawful use of a weapon, and theft, and the record reveals additional misdemeanor and juvenile adjudications. Defendant, however, maintains that his youth, testimony in his favor by members of the community, and the facts that he had been recently employed and had a family weighed against imposing such a lengthy sentence.

¶ 58       Even if we assume for the purpose of argument that defense counsel should have filed such a motion, defendant cannot establish prejudice under *Strickland*. The trial court is vested with wide discretion in sentencing decisions, and its decision will not be disturbed so long as the sentence is within the statutory range, proper factors in aggravation and mitigation are considered, and the sentence is not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 209-10 (2000). In this case, defendant does not argue that the trial court considered improper factors in aggravation or mitigation, or that it is outside of the statutory range. Defendant seems to only take issue with how the trial court balanced the factors, which is not a valid reason for overturning the sentencing decision. The record demonstrates that the trial court was well within its discretion in imposing the sentence that it did, and defendant does not really explain what his counsel should have done differently regarding his sentencing other than filing a motion to reconsider the sentence. Because filing such a motion would have been fruitless, defendant was not prejudiced by defense counsel's decision not to do so.

¶ 59                              III. CONCLUSION

¶ 60        Defendant was not denied effective assistance of trial counsel or appellate counsel. Because defendant's postconviction petition does not make a substantial showing of a constitutional violation, the circuit court was correct to dismiss the petition at the second stage.

¶ 61        The State has also asked for reimbursement of its full costs for prosecuting this appeal on the ground that the defendant's petition was frivolous. See 735 ILCS 5/22-105 (West 2010). Given that the circuit court advanced defendant's petition to the second stage of proceedings before dismissing it, the petition was not frivolous. See *People v. Alcozer*, 241 Ill. 2d 248, 254-59 (2011) (equating the definition of frivolous in section 22-105 of the Code of Civil Procedure with the standard for dismissal of a postconviction petition at the first stage of proceedings). The State's request is denied.

¶ 62        Affirmed.