NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180456-U

NO. 4-18-0456

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 12, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| RONALD W. YOUNG, | ) | No. 03CF837 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err by denying defendant's petition for leave to file a
successive postconviction petition.

¶ 2    In March 2018, defendant, Ronald W. Young, filed his third motion for leave to

file a successive postconviction petition. In his motion, defendant asserted he was denied

effective assistance of counsel because counsel failed to file a motion to submit an expert on

eyewitness identification testimony. In April 2018, the Champaign County circuit court entered

an order denying defendant's third motion for leave to file a successive postconviction petition.

Defendant appeals, contending the circuit court erred by denying him leave to file a successive

postconviction petition. We affirm.

¶ 3                              I. BACKGROUND

¶ 4        In June 2003, a grand jury indicted defendant on one count of first degree murder (720 ILCS 5/9-1(a)(1) (West 2002)), alleging he, without lawful justification and with the intent to kill Latroy Creighton, shot Creighton with a handgun, causing his death on May 10, 2003. In April 2004, the circuit court held a jury trial on the charge. The evidence at defendant's trial consisted of several witnesses who testified they witnessed a man, wearing a sweatshirt with a hood, shoot another man and several witnesses who testified the dying victim identified "Ronald Young" as the man who shot him. Several witnesses testified the shooting occurred around 2 a.m. in the morning. In addition to the eyewitness testimony, a police officer testified he searched defendant's apartment later in the day after the shooting and found a pile of clothes, which consisted of a lightweight jacket with a hood, a pair of jeans, sweatpants, and a pair of shoes. The shoes and pants were still damp with partially dried mud on them. One of the eyewitnesses testified it had been raining that night and the ground was muddy. Defendant's wife testified defendant got a telephone call sometime after she had gone to bed at 11 p.m. on May 9, 2003. After receiving the call, defendant left. When he returned to the bedroom, defendant asked her to take him to his sister's house. Defendant's wife testified defendant was "breathing hard" and behaving "a bit frantic." She took defendant over to his sister's house between 2:30 and 3 a.m. Later that day, defendant's wife went with defendant to the Greyhound bus terminal where his mother worked and bought him a ticket to travel to Grand Rapids, Michigan, where his father lived. Defendant left on the bus to Michigan between 11 and 11:30 a.m. Defendant was later arrested in Michigan. Urbana police investigator Bryant Seraphin testified he and Investigator Duane Maxey went to Michigan and interviewed defendant. During the interview, defendant told the investigators he went to Michigan to see his biological father and had traveled from Meridian, Mississippi, where he was visiting his sick grandmother.

Defendant indicated he left for Mississippi before 10 a.m. on May 9, 2003. At the conclusion of the trial, the jury found defendant guilty of first degree murder, and the circuit court later sentenced him to 65 years' imprisonment.

¶ 5    On direct appeal, defendant argued (1) the circuit court erred in admitting statements made by the victim prior to his death, (2) the court erred by denying the jury's request for transcripts of two witnesses, (3) the court erred in admitting testimony of a witness regarding an out-of-court statement made by the victim, (4) the State failed to prove him guilty beyond a reasonable doubt, and (5) his sentence was excessive. This court affirmed defendant's conviction and sentence. *People v. Young*, 359 Ill. App. 3d 1220, 904 N.E.2d 1251 (2005) (table).

¶ 6    In August 2007, defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)). In June 2008, defendant, through appointed counsel, filed an amended postconviction petition. In the amended petition, defendant alleged multiple constitutional violations, including the claim he was denied the effective assistance of trial counsel because counsel did not (1) file a motion for change of venue, (2) preserve numerous issues for appellate review, (3) confer with him about tendering a second degree murder jury instruction, (4) move for a mistrial based on the State's witnesses contradicting each other, and (5) call Jason Jones as an alibi witness. In August 2008, the State filed a motion to dismiss, which the circuit court allowed in part and denied in part. The court continued the case for an evidentiary hearing on, *inter alia*, defendant's claim counsel was ineffective for failing to call Jones as an alibi witness. Following a December 2008 hearing, the court denied defendant's amended postconviction petition. Defendant appealed both the circuit court's dismissal of part of his amended postconviction petition and the denial of the remaining

claims, and this court affirmed the circuit court's judgment. *People v. Young*, 398 Ill. App. 3d 1118, 988 N.E.2d 1130 (2010) (table).

¶ 7 In April 2013, defendant filed his first *pro se* petition for leave to file a successive postconviction petition. In his successive postconviction petition, defendant alleged actual innocence and claimed to have met an inmate named Neville Ford, who allegedly witnessed the murder of Creighton. To the petition, defendant attached Ford's affidavit, wherein Ford claimed to have witnessed a man, whom he only knew by the name "Black," commit the murder. The circuit court allowed defendant's request to file the successive postconviction petition and appointed counsel to represent him. In November 2013, appointed counsel filed an amended successive postconviction petition. In January 2014, the State filed an answer to the amended petition and attached documentation indicating Ford was incarcerated in the Department of Corrections on May 10, 2003, the day of Creighton's murder. Thus, the State argued the documentation refuted the basis for defendant's claim of actual innocence. In February 2014, the court found the State's position to be "well-taken." Given that Ford was incarcerated at the time of the murder, the court found defendant's "petition to file a successive post-conviction petition is not only outrageous, but is totally without merit." Accordingly, the court denied "defendant's request." Defendant appealed the circuit court's denial of his successive postconviction petition, and this court affirmed the circuit court's judgment. *People v. Young*, 2015 IL App (4th) 140209-U.

¶ 8 In August 2016, defendant filed his second motion for leave to file a successive postconviction petition, asserting his sentence violated the protections in *Alleyne v. United States*, 570 U.S. 99 (2013). In September 2016, the circuit court denied defendant's second motion to file a successive postconviction petition. Defendant appealed, and this court granted

defendant's motion to dismiss his appeal. *People v. Young*, No. 4-16-0759 (Sept. 20, 2018) (nonprecedential motion order).

¶ 9 In March 2018, defendant filed his third motion for leave to file a successive postconviction petition, which is the one at issue in this appeal. In his motion, defendant raised an ineffective assistance of counsel claim based on trial counsel's failure to file a motion to submit an expert on eyewitness identification testimony. He also contended appellate counsel was ineffective for failing to raise the issue on direct appeal. In support of his argument, defendant cited the supreme court's decision in *People v. Lerma*, 2016 IL 118496, 47 N.E.3d 985. On April 5, 2018, the circuit court entered a written order denying defendant's request. The court found defendant failed to explain or identify an objective factor that impeded his ability to raise his claim during his original postconviction proceedings and did not demonstrate the claim not raised during his initial postconviction proceedings so infected the trial that the resulting conviction violated due process.

¶ 10 In August 2018, defendant filed a motion for leave to file a late notice of appeal in compliance with Illinois Supreme Court Rule 606(c) (eff. July 1, 2017). See Ill. S. Ct. R. 651(d) (eff. July 1, 2017) (providing the procedure for appeals in postconviction proceedings is in accordance with the rules governing criminal appeals). This court allowed defendant's motion, and defendant filed his late notice of appeal. Thus, we have jurisdiction of defendant's appeal under Illinois Supreme Court Rule 651(a) (eff. July 1, 2017).

¶ 11 II. ANALYSIS

¶ 12 Defendant argues he did establish cause and prejudice for the filing of a successive postconviction petition raising an ineffective assistance of counsel claim based on counsel's failure to file a motion to present an expert on eyewitness identification. The State

- 5 -

disagrees. When the circuit court has not held an evidentiary hearing, this court reviews *de novo* the denial of a defendant's motion for leave to file a successive postconviction petition. See *People v. Gillespie*, 407 Ill. App. 3d 113, 124, 941 N.E.2d 441, 452 (2010).

¶ 13 Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2016)) provides the following:

> "[O]nly one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

Thus, for a defendant to obtain leave to file a successive postconviction petition, both prongs of the cause-and-prejudice test must be satisfied. *People v. Guerrero*, 2012 IL 112020, ¶ 15, 963 N.E.2d 909.

¶ 14 With a motion for leave to file a successive postconviction petition, the court is just conducting "a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24, 102 N.E.3d 114. The court is only to

ascertain "whether defendant has made a *prima facie* showing of cause and prejudice." *Bailey*, 2017 IL 121450, ¶ 24. If the defendant did so, the court grants the defendant leave to file the successive postconviction petition. *Bailey*, 2017 IL 121450, ¶ 24.

¶ 15    In his third motion for leave to file a successive postconviction petition, defendant only raised a claim of ineffective assistance of counsel based on trial counsel's failure to file a motion to submit an expert on eyewitness identification testimony. This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999). To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64. The *Strickland* Court noted a court should address prejudice rather than whether counsel's representation was constitutionally deficient when to do so is easier. *Strickland*, 466 U.S. at 697.

¶ 16    In support of his argument trial counsel was ineffective for failing to file a motion to present expert testimony on eyewitness identification, defendant cites *Lerma*, 2016 IL 118496,

¶ 32, where the supreme court found the circuit court abused its discretion by denying the defendant's request to present relevant and probative testimony from a qualified expert on eyewitness identification where the State's only evidence against him consisted of eyewitness identification. The supreme court noted the circuit court's reasons for denying the expert testimony were both expressly contradicted by the expert's report and inconsistent with the actual facts of the case. *Lerma*, 2016 IL 118496, ¶ 32.

¶ 17    Before addressing whether the circuit court abused its discretion in that case, the supreme court commented on the current state of jurisprudence concerning the admission of eyewitness expert testimony. *Lerma*, 2016 IL 118496, ¶ 24. The supreme court stated the following:

"The last time this court addressed the admission of such testimony was in [*People v.*] *Enis*, [139 Ill. 2d 264, 564 N.E.2d 1155 (1990),] which was decided more than 25 years ago when the relevant research was in its relative infancy. Even then, this court recognized that 'in the past decade a number of courts have held that expert testimony concerning eyewitness identification should be admissible in certain circumstances.' *Enis*, 139 Ill. 2d at 286–87, [564 N.E.2d at 1164] (collecting cases). Nevertheless, this court also expressed skepticism and caution against the overuse of such testimony (*id*. at 289[, 564 N.E.2d at 1165]), such that the exclusion of such testimony remains the common practice in Illinois to this day. See, *e.g.*, *People v. McGhee*, 2012 IL App (1st) 093404, ¶ 55 [, 964 N.E.2d 715] (observing that 'Illinois continues to reject, at least in practice, expert testimony on the reliability of eyewitnesses'). The decades since *Enis*, however, have seen a dramatic shift in the legal landscape, as expert testimony concerning

the reliability of eyewitness testimony has moved from novel and uncertain to settled and widely accepted. Indeed, as the Supreme Court of Pennsylvania recently noted, there is now 'a clear trend among state and federal courts permitting the admission of eyewitness expert testimony, at the discretion of the trial court, for the purpose of aiding the trier of fact in understanding the characteristics of eyewitness identification.' *Commonwealth v. Walker*, 92 A.3d 766, 782-83 (Pa. 2014) (collecting demonstrative cases from 44 states, the District of Columbia, and 10 federal circuit courts). The reason for this trend is that, although findings of the sort described in Dr. Fulero's and Dr. Loftus's reports are now 'widely accepted by scientists,' those same findings 'are largely unfamiliar to the average person, and, in fact, many of the findings are counterintuitive.' *State v. Guilbert*, 49 A.3d 705, 723-24 (Conn. 2012) (collecting cases and studies demonstrating this point). At the same time, advances in [deoxyribonucleic acid] testing have confirmed that 'eyewitness misidentification is now the single greatest source of wrongful convictions in the United States, and responsible for more wrongful convictions than all other causes combined.' *State v. Dubose*, 699 N.W.2d 582, 591-92 (Wis. 2005) (collecting relevant studies). In other words, in the 25 years since *Enis*, we not only have seen that eyewitness identifications are not always as reliable as they appear, but we also have learned, from a scientific standpoint, why this is often the case. Accordingly, whereas *Enis* allowed for but expressed caution toward the developing research concerning eyewitness identifications, today we are able to recognize that such research is well settled, well supported, and in appropriate cases a perfectly proper subject for expert

testimony." *Lerma*, 2016 IL 118496, ¶ 24.

¶ 18    "[T]rial counsel has broad leeway in deciding whether to call a particular witness or to pursue a given strategy." *McGhee*, 2012 IL App (1st) 093404, ¶ 54. Our supreme court has made clear "a reviewing court will be highly deferential to trial counsel on matters of trial strategy, making every effort to evaluate counsel's performance from his perspective at the time, rather than through the lens of hindsight." *People v. Perry*, 224 Ill. 2d 312, 344, 864 N.E.2d 196, 216 (2007). In *Lerma*, a 2016 decision, the supreme court recognized it was common practice in Illinois for the past 25 years to exclude expert testimony on eyewitness identification. *Lerma*, 2016 IL 118496, ¶ 24. Defendant's trial took place in April 2004, when the common practice was to deny requests to present an expert witness on eyewitness identification testimony. Defendant recognized that fact in paragraph 13 of his third motion for leave to file a successive postconviction petition. Thus, even if counsel had located an expert on eyewitness identification and made a request to present the expert's testimony, the circuit court would have denied the request in 2004. Accordingly, defendant cannot establish the prejudice prong of the *Strickland* test and the prejudice prong of the cause and prejudice test.

¶ 19    In his reply brief, defendant suggests trial counsel's failure to call a witness to challenge the eyewitnesses' identification of him was error even at the time of defendant's 2004 trial. Under that theory, defendant could have raised the issue in his original postconviction petition, and thus he cannot establish the cause prong of the cause and prejudice test.

¶ 20    Accordingly, we find the circuit court did not err by denying defendant's third motion for leave to file a successive postconviction petition.

¶ 21                          III. CONCLUSION

¶ 22    For the reasons stated, we affirm the Champaign County circuit court's judgment.

¶ 23         Affirmed.