THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KEVIN W. WHEAT, Defendant-Appellant.

Second District    No. 2—06—0888

Opinion filed June 2, 2008.

Thomas A. Lilien and Paul Alexander Rogers, both of State Appellate Defender's Office, of Elgin, for appellant.

John H. Vogt, State's Attorney, of Freeport (Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), and L. Anita Richardson, of Skokie, for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial, defendant, Kevin W. Wheat, was convicted of possession with intent to deliver more than 100 but less than 400 grams of cocaine (720 ILCS 570/401(a)(2)(B) (West 2002)). He was sentenced to 16 years' imprisonment. On appeal, defendant argues that: (1) the trial court erred by denying his motion to quash a search warrant and suppress evidence; (2) the trial court erred by responding to a jury question asking for a definition of "reasonable doubt"; (3) the trial court erred by refusing defendant's request to poll the jury; and (4) he is entitled to a credit of $1,430 against his fines. We affirm in part, reverse in part, and remand for a new trial.

## I. BACKGROUND

The background material in section I is nonpublishable under Supreme Court Rule 23.

## II. ANALYSIS

### A. Motion to Quash and Suppress

The material in section II is nonpublishable under Supreme Court Rule 23.

### B. Polling the Jury

We address defendant's argument that the trial court erred by refusing his request to poll the jury, as we find this issue dispositive of the remainder of the case. Defendant argues that the record shows that the trial court gave him no more than two seconds to ask for the jury to be polled before discharging the jury and that he ultimately made the request to poll while the jury was still present.

We summarize the facts surrounding defendant's request to poll in some detail, as they are particularly relevant in determining whether the request was timely and whether defendant was otherwise given

the opportunity to request a poll. When the jury returned after deliberations, the trial court read the verdict and noted that the jurors had signed the pertinent verdict form and left the other two verdict forms unsigned. Within two seconds, the trial court then addressed the jury as follows:

"[THE COURT:] All right. Thank you, ladies and gentlemen of the jury. You are now discharged from your duties and responsibilities.

You can now write the book or not write the book. It's up to you. [DEFENSE COUNSEL:] Judge—

THE COURT: You can dis—discuss with the defense attorney anything that you choose or not discuss with the defense attorney. Sometimes the lawyers have questions. Feel free to answer them. Feel free not to answer them.

The State's Attorney stepped out for a few moments, and I wasn't gonna keep you in there 'cause I'm not sure how long *** before he comes back, so I thought you have done your job and I'm discharging you, as I say, from your duties."

The trial court then told the jurors that, if they were wondering what would happen next, there would typically be posttrial motions in which the defense attorney would point out any errors that occurred. If the trial court denied the motions, it would proceed to sentencing, which the trial court described to the jury in general terms. The trial court next stated, "So that's the process. It will continue on for some time to come." There was a pause of about four seconds, after which defense counsel stated, "Your Honor, we would make a motion [that] the Jury be polled." The trial court replied, "I've already discharged them. I looked at you and waited a moment, and you didn't ask for it. So they've been discharged."

The trial court then told the jury, in remarks that the record shows lasted about 54 seconds:

"As you—as you walk out of the courtroom[,] *** if you walk by those monuments out there, the people that paid for the seats we're in, I think you can walk by with a sense of pride knowing that you discharged your responsibilities. You gave the Defendant an opportunity for a fair trial, I think a very fair trial. You did what you were supposed to do. And as I say, you can walk by knowing that you didn't let those people down, that they did not die in vain, they died to make sure that people would have an opportunity, among other things, freedom of region [sic], freedom of speech, but certainly freedom to have a jury trial and to make the government prove that which it accuses us of.

Thank you very much for your service. Have a good day."

During the hearing on defendant's motion for a new trial, in

discussing the request to poll, the trial court stated that the verdict had been returned and it had discharged the jury. Defense counsel responded that, after "the jury read the instruction [sic]," "the court looked at [him] for a second or two" and then discharged the jury. Defense counsel further stated that he asked to poll the jury in the middle of the trial court's instruction, but the trial court informed him that the jury had already been discharged, and it did not poll the jury. The trial court replied that it had never seen a jury flip on a polling issue, though a flip could theoretically happen. It "looked, [it] didn't hear a request for a polling, [it] spoke, [and] discharged the jury." The trial court stated that it considered asking the jurors to sit back down and go through the polling process, but decided that, since it had dismissed them, they could "go on their way." The trial court denied defendant's motion for a new trial.

The opportunity to poll jurors is basic to our legal system, which requires unanimity among the jurors. *People v. Rehberger*, 73 Ill. App. 3d 964, 968 (1979). "The purpose of the poll of a jury is to determine whether the verdict has in fact been freely reached and remains unanimous." *People v. Ellis*, 93 Ill. App. 3d 981, 985 (1981); see also *People v. Kliner*, 185 Ill. 2d 81, 166 (1998). Through a jury poll, jurors may freely assent or dissent to the verdict without the fear, errors, or coercive influences that may have prevailed in the jury's private collective deliberations. *People v. Banks*, 344 Ill. App. 3d 590, 597 (2003). In Illinois, after a guilty verdict is returned but before it is accepted and recorded, a criminal defendant has an absolute right to poll the jury regarding whether each individual agreed with the pronounced verdict. *Rehberger*, 73 Ill. App. 3d at 968-69. This right has been described as a "substantial" right (*People v. Herron*, 30 Ill. App. 3d 788, 791 (1975)), and, if the jury is not polled despite a defendant's timely request to do so, reversible error occurs (*People v. DeStefano*, 64 Ill. App. 2d 389, 408-09 (1965)). Moreover, if a defendant is denied the opportunity to poll the jury, his conviction must be reversed. See *Rehberger*, 73 Ill. App. 3d at 969 (where jury's verdicts were not pronounced in open court and the defendant did not have a chance to poll the jury before the trial court accepted the verdicts, the defendant's convictions were reversed); see also *People v. Townsend*, 5 Ill. App. 3d 924, 926 (1972) (appellate court ordered a new trial where the record showed that sealed verdict was received without agreement of the defense and was opened outside the defendant's presence, and where the jury was not present and could not be polled when the defendant was advised of the verdict). Still, a defendant is required to have only an *opportunity* to poll the jury, so the right to poll may be waived. See *People v. Hood*, 262 Ill. App. 3d 171, 178 (1994).

Our research has not revealed any cases that directly discuss the applicable standard of review for the polling issues raised by defendant. We note that polling the jury on nonverdict-related issues, such as the potentially prejudicial effect of newspaper articles, is within the trial court's discretion. *People v. Black*, 314 Ill. App. 3d 276, 280 (2000). The manner in which jury polls are conducted is also within the trial court's discretion (*People v. Chandler*, 88 Ill. App. 3d 644, 650 (1980)), and a trial court's determination regarding whether a juror's assent to the verdict was voluntary will not be set aside unless the determination is clearly unreasonable (*Kliner*, 185 Ill. 2d at 167).

For the issues at hand, we believe that any findings of fact made by the trial court relating to the sequence of events surrounding the discharge of the verdict and the defendant's request to poll, such as the amount of time that elapsed, should be accepted unless they are against the manifest weight of the evidence. See *Best v. Best*, 223 Ill. 2d 342, 350-51 (2006) (trial court's factual findings generally reviewed under manifest-weight-of-the-evidence standard). Determinations of whether that amount of time was sufficient to request to poll the jury and whether the defendant made the request in a timely manner cannot be prescribed within fixed parameters but, instead, are subject to some latitude. We therefore believe that they should be left to the discretion of the trial court, which was in control of the jury and in the best position to determine the answers to these questions in light of the proceedings. See *In re Marriage of Rife*, 376 Ill. App. 3d 1050, 1058-59 (2007) (reviewing courts defer to trial court decisions that are within the trial court's special competence, in recognition of the trial court's "superior vantage point" on these decisions).

Defendant argues that the Seventh Circuit dealt with a situation identical to his in *United States v. Randle*, 966 F.2d 1209 (7th Cir. 1992). There, after the trial court read the verdict, it waited only 1½ seconds before beginning to read the defendant's probation report in the jury's presence. *Randle*, 966 F.2d at 1214. The trial court found that the pause was sufficient to allow the defendant to request a poll, but the Seventh Circuit disagreed, stating that "even the fastest thinking attorney could not have anticipated that the judge had concluded his remarks and was waiting for a request to poll." *Randle*, 966 F.2d at 1214. The Seventh Circuit noted that within 12 seconds, when defense counsel realized what the trial court was reading, he tried to get the trial court's attention, but it was too late because the jury had already heard prejudicial information about the defendant's arrest record. *Randle*, 966 F.2d at 1214. The Seventh Circuit labeled the 1½-second interval "clearly *** inadequate" and reversed and remanded

for a new trial. *Randle*, 966 F.2d at 1214. In doing so, it reiterated that, after the verdict has been read, a trial court is required to give both parties a reasonable opportunity to ask to poll the jury. It recommended that, "[b]ecause what is a reasonable time is fact specific and defies precise parameters, the better practice is for the district court to inquire of both counsel if either has anything further before the jury is discharged, which, of course, invites the request to poll." *Randle*, 966 F.2d at 1214.

The State argues that *Randle* is distinguishable because here the trial court actually waited 16 seconds between the time it *began* reading the verdict and the time it discharged the jury. The State further argues that, when defense counsel said the word "Judge" six seconds later, nothing suggested that he was asking the trial court to poll the jury. Instead, he waited another minute and 14 seconds before he spoke again and asked that the jury be polled.

The State's argument is not persuasive. A defendant exercising his right to poll the jury is not a quiz show contestant who must anticipatorily press the buzzer before the host is finished asking the question or risk losing points. That is, a defendant is not required to impede on the trial's decorum by interrupting the trial court's reading of the verdict in order to preserve his request to poll. See also *United States v. Marr*, 428 F.2d 614, 615 (7th Cir. 1970) ("the right to poll a jury cannot be exercised intelligently until after the verdict has been announced"). We recognize that we are not required to follow decisions of the federal courts, other than the United States Supreme Court. *People v. Calvert*, 326 Ill. App. 3d 414, 424 (2001). Still, such decisions can serve as persuasive authority and provide guidance. *People v. Criss*, 307 Ill. App. 3d 888, 900 (1999). We agree with defendant that, as in *Randle*, the relevant time period in determining whether there was a sufficient opportunity to request a poll is the time between when the trial court *finishes* reading the verdict and when it discharges the jury. *Randle*, 966 F.2d at 1214.

The trial court implicitly recognized the relevant time period when it stated that it looked at defense counsel for "a moment" before discharging the jury. We agree with defendant that the record reveals that the relevant time period was about two seconds. This interval is almost indistinguishable from the 1½ seconds at issue in *Randle*, and we agree with the *Randle* court's reasoning that such a short interval of time does not provide a defendant with a reasonable opportunity to request a jury poll. See also *United States v. Marinari*, 32 F.3d 1209, 1214 (7th Cir. 1994) (pause of " 'several seconds' " between the trial court's reading of the verdict and its remarks to the jury was an insufficient amount of time to allow the defendant to move to poll the jury).

Moreover, the record shows that defense counsel attempted to request a jury poll at what could fairly be characterized as the first available occasion. Although defense counsel interjected "Judge" six seconds after the trial court discharged the jury, it was while the trial court was still addressing the jury and presumably when defense counsel began to realize what was happening. The trial court did not allow defense counsel to speak at that moment. Even if we accepted the State's argument that the interjection was not sufficiently descriptive to show that defense counsel was trying to request a jury poll, defendant made a formal request to poll the jury when the trial court paused in its remarks to the jury, at the first reasonable opportunity. See *Marinari*, 32 F.3d at 1215 ("counsel's decision not to interrupt the court when it was speaking is not to be held against him").

The trial court denied the motion to poll, stating that it had already discharged the jury, yet it then continued to address the jury for almost another minute. This raises the question of whether the trial court could have, and should have, polled the jury at the time of defendant's request, the discharge notwithstanding. We find guidance on this issue in *People v. McNeely*, 216 Ill. App. 3d 647 (1991). There, the trial judge read two verdict forms of not guilty and then, not realizing that two guilty verdict forms remained, stated, " 'And now you know why we can't do much with narcotics, and you're excused. Thank you very much.' " *McNeely*, 216 Ill. App. 3d at 649. There was evidence that the trial judge sounded angry when he made these comments and that he subsequently threw down the verdict forms and ran into his chambers. *McNeely*, 216 Ill. App. 3d at 650. The jurors started talking amongst themselves and went into the jury room. The judge was quickly informed that he had neglected to read the remaining forms, and he returned to the bench after one or two minutes and asked the jury to return to the jury box. *McNeely*, 216 Ill. App. 3d at 649-50. The judge then read the guilty verdicts and polled the jury, which affirmed the verdicts. *McNeely*, 216 Ill. App. 3d at 649.

On appeal, the defendant argued that it was reversible error to receive the guilty verdicts after the jury had been discharged. The appellate court stated that the "pivotal question" was whether the trial court had lost control of the jury, *i.e.*, "whether the protective shield which must surround a jury [had been] removed, allowing the jurors to be influenced by improper outside factors." *McNeely*, 216 Ill. App. 3d at 652. Although there was testimony that jurors may have heard the defendant talk to his girlfriend after hearing the initial verdicts of not guilty, and that one or two jurors may have gone to the back gate, the appellate court stated that the majority of the evidence showed that the jurors just went back to the jury room by themselves and

returned to the jury box when recalled by the judge. The appellate court held that under these circumstances the trial court could have properly concluded that the jury was not subjected to any improper outside influences and could have properly received its verdicts. *McNeely*, 216 Ill. App. 3d at 652.

In the instant case, there was even less of a threat of outside influences than in *McNeely*. The record clearly shows that, although the trial court stated that it was discharging the jury, it continued to address the jurors at length. Even after the trial court denied defendant's motion to poll, it again continued to address the jury for almost another minute. As the jurors still remained seated in the jury box when defendant made his motion to poll and had not been told any prejudicial information by the trial court or other parties, there is no question that the jurors were not subject to influence from any improper outside factors.

We note that our supreme court stated over 100 years ago that "[a]fter the verdict is received, and the jury discharged, the control of the jury over the case is at an end; they can not be recalled to alter or amend the verdict." *Bond v. Wood*, 69 Ill. 282, 284 (1873). This general statement equates the discharge of the jury with a loss of control over the jury, which is often the case. However, *McNeely* teaches us that, in situations where the jury remains within the trial court's control, the jury can be recalled to alter or amend the verdict. The appellate court has stated that the "governing legal principle is that once a verdict has been rendered, accepted by the court, and judgment entered thereon, *and the jury has separated*, the court has lost control of the verdict, and the only remedies are either a mistrial or some variety of post-trial relief." (Emphasis added.) *People v. Crite*, 261 Ill. App. 3d 1041, 1047 (1994). It follows that, where the jury has not separated, the trial court is still in control of the verdict.

Another Seventh Circuit case provides us with a factual situation analogous to the instant case. In *Marinari*, after the trial court read the verdict, it paused for only a few seconds before making concluding remarks to the jury. *Marinari*, 32 F.3d at 1214. The defendant requested to poll the jury after the trial court had excused the jury and the jurors had retired to the jury room. The trial court denied the motion. *Marinari*, 32 F.3d at 1212. The Seventh Circuit held that the pause before the trial court's concluding remarks was insufficient to allow the defendant to request a jury poll. *Marinari*, 32 F.3d at 1214. It also held that the defendant's eventual request to poll was timely because the jurors were still under the trial court's control, in that they had not dispersed and were not tainted by any outside influences. *Marinari*, 32 F.3d at 1215. It concluded that, because the defendant

had an absolute right to poll the jury at the time of his request, the trial court erred by not recalling the jury and conducting a poll. The Seventh Circuit therefore reversed the defendant's conviction and remanded the case for a new trial. *Marinari*, 32 F.3d at 1215.

Here, like in *Marinari*, the trial court did not provide enough time between reading the verdict and stating that it was discharging the jury to reasonably allow defendant to make a motion to poll the jury. Furthermore, just as in *Marinari*, notwithstanding this insufficient pause, defendant made the motion to poll while the jury was still available to be polled. As discussed, there is no question that the jurors had not been subjected to influence from any improper outside factors when defendant made the request. The motion was therefore timely, and the trial court abused its discretion by ruling otherwise. As mentioned, if the jury is not polled in spite of a defendant's timely request to do so, reversible error occurs. *DeStefano*, 64 Ill. App. 2d at 408-09. Accordingly, we reverse defendant's conviction and remand the case for a new trial.

Because defendant will be receiving a new trial, we only briefly discuss defendant's remaining arguments that the trial court erred by responding to the jury's request to define "reasonable doubt" and that defendant is entitled to a credit of $1,430 against his fines. Regarding the former argument, the trial judge who presided over defendant's case has since retired, so the issue is unlikely to reoccur on remand. On this subject, we simply restate our supreme court's admonition that the "law in Illinois is clear that neither the court nor counsel should attempt to define the reasonable doubt standard for the jury." *People v. Speight*, 153 Ill. 2d 365, 374 (1992). Regarding sentencing credits, the State agrees that under section 110—14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110—14 (West 2006)) defendant is entitled to $1,430 in credit against the fines imposed as part of his sentence, for the 286 days he spent in custody between the date of his arrest and the date of sentencing. This issue will become relevant on remand only if defendant is again found guilty and ordered to pay fines.

### III. CONCLUSION

For the foregoing reasons, we affirm the Stephenson County circuit court's ruling denying defendant's motion to quash the search warrant and suppress evidence. However, we reverse defendant's conviction and remand the case for a new trial. In doing so, we reiterate that the trial court must give defendant a reasonable opportunity to ask to poll the jury. We also echo the *Randle* court's advice that, because what constitutes a "reasonable" time varies according to the facts of

the case and is not quantifiable within fixed parameters, the better practice is for the trial court to invite a request to poll by asking the parties if they have anything further before it discharges the jury. Finally, the trial court should keep in mind that, even after it has told the jury that it is discharged, the jury is still subject to being recalled and polled as long as it remains within the trial court's control.

Affirmed in part and reversed in part; cause remanded.

GROMETER and CALLUM, JJ., concur.