2025 IL App (4th) 231467

NO. 4-23-1467

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 13, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| JOHN C. BOOSE, | ) | No. 15CF490 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert Randall Wilt, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court, with opinion.
Justices DeArmond and Grischow concurred in the judgment and opinion.

**OPINION**

¶ 1    Following an April 2021 jury trial, defendant, John C. Boose, was found guilty of one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2014)). On appeal, defendant argues the trial court erred when it found his trial counsel's performance was deficient but failed to grant him a new trial following an evidentiary hearing pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). Alternatively, defendant argues this court should reverse and remand for a new trial because the court erroneously concluded defendant was not prejudiced by his trial counsel's deficient performance. The State responds the court did not err when it (1) declined to order a new trial following its finding that trial counsel's performance was deficient and (2) found defendant failed to establish he was prejudiced by counsel's deficient performance.

¶ 2    We affirm.

¶ 3                                    I. BACKGROUND

¶ 4            In 2015, the State charged defendant with multiple counts of first degree murder in connection with the death of his wife, Regina Boose (720 ILCS 5/9-1(a)(1), (a)(2) (West 2014)).

¶ 5                                    A. Pretrial Matters

¶ 6            Prior to trial, defendant filed a motion to suppress evidence obtained during a search of his home based on alleged deficiencies in the search warrant. The trial court ultimately granted the motion to suppress, and the State filed an interlocutory appeal in 2017. In 2018, the Second District affirmed the trial court's judgment. *People v. Boose*, 2018 IL App (2d) 170016, ¶ 18. Following this interlocutory appeal, trial counsel filed several motions *in limine*, including one concerning defendant's interview with the police. That motion, however, did not move to exclude portions of the video showing (1) defendant's attempts to obtain an attorney and (2) Sergeant Kevin Gulley asking defendant, "Why should you get an attorney when you didn't do anything?"

¶ 7                                    B. Trial

¶ 8            At trial, D.P. testified that on January 29, 2015, she was seven years old and lived with her grandmother, Regina, and her grandmother's husband, defendant. Earlier in the day, while Regina was not home, defendant asked D.P. if Regina had "cheated" or brought her around any other men. D.P. told him Regina had brought her around a man named Nate.

¶ 9            D.P. testified that later that evening, after Regina had returned home, a fight broke out between Regina and defendant regarding Nate. During the fight, defendant struck Regina with his fists and a broomstick as Regina struck him back with a glass. At one point, defendant dragged Regina on the floor into D.P.'s bedroom. While in D.P.'s room, Regina crawled into her bed, but defendant dragged her out of it by her feet. After dragging her out of bed, defendant repeatedly struck Regina in the face with his fists. The fight continued, but eventually D.P. went to sleep.

¶ 10        The next morning, D.P. woke up to Regina calling out to her. According to D.P., Regina told her "look what your papa did to me" and had bruising and scabbing around her nose and eyes. After speaking with Regina, D.P. went back to sleep in her room until she heard defendant calling her name from his and Regina's bedroom. D.P. went to their room, where defendant was trying to rouse Regina. After they were unable to wake her, an ambulance came and took Regina to the hospital, where she was later pronounced dead.

¶ 11        Sergeant Gulley with the Rockford Police Department also testified. Sergeant Gulley interviewed defendant in connection with this case on January 31, 2015. According to Sergeant Gulley, at the time he interviewed defendant, he had significant swelling to the knuckles on his right hand. Sergeant Gulley took two photos of defendant's hands, which were admitted into evidence as People's exhibit Nos. 16 and 17.

¶ 12        The forensic pathologist who performed an autopsy on Regina testified she was killed by blunt force trauma. Specifically, the forensic pathologist testified Regina's forehead and nose had abrasions from a linear object and she had further suffered blows to the front, back, and sides of her head. Regina had additional blunt force injuries from her head down to her feet, including her arms, forearms, and thighs. An examination of Regina's skull revealed significant bleeding and swelling of the brain. Finally, the forensic pathologist opined Regina's injuries were not likely to be a result of a fall down the stairs or in a bathtub.

¶ 13        Additionally, Nathaniel Pulliam testified he was Regina's friend and went by the name "Nate." On the evening of January 29, 2015, he got a series of calls, text messages, and voicemails from a person claiming to be Regina's husband. Pulliam testified to the content of the text messages and voicemails. Specifically, defendant threatened to harm Pulliam if he did not stay away from Regina. In one of the voicemail messages, which was sent at 8:22 a.m. on January 30,

2015, he heard defendant yelling at Regina. He also heard Regina choking and gurgling in the background. Pulliam also received a message from Regina that she was having "problems" with her husband. On cross-examination, Pulliam was impeached with his prior statement admitting that he had deleted several of the voicemails from his phone before providing it to police.

¶ 14        By agreement of the parties, the State was allowed to play portions of defendant's videotaped police interview for the jury. Throughout the recordings, defendant denied striking Regina. In one portion of the interview, defendant requested counsel, and Sergeant Gulley asked defendant, "Why should you get an attorney when you didn't do anything?" Trial counsel did not object to this evidence. Later, during a recess, the trial court expressed concern about the video and asked defense counsel whether "the decision to not oppose the playing of the video other than the portions redacted" was part of his trial strategy. Defense counsel responded it was.

¶ 15        Defendant presented portions of D.P.'s videotaped interview with the police. In the interview, D.P. explained that earlier in the day on January 29, 2015, Regina had gone to Rockford Memorial Hospital due to prior injuries, which were visible when she and defendant picked up Regina. Some of the details of her interview were different from the sequence of events presented in her trial testimony. Specifically, in her trial testimony, D.P. did not mention picking up Regina from the hospital and instead testified the conflict began when Regina left the house to get snacks from the store.

¶ 16        Following closing arguments, the trial court provided instructions to the jury, which included the following:

> "The defendant is presumed innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict and is not overcome unless from all of the evidence in

this case you are convinced beyond a reasonable doubt that he is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

¶ 17 Following jury deliberations, but before the jury was brought out to read the verdict, the trial court again expressed concern about the admission of the video of defendant's interview with police, specifically the portions involving defendant's request for counsel. The court explained another judge suggested interrupting jury deliberations to admonish them not to consider it, but the court worried that would only reinforce the potential prejudice. The court stated if there was a guilty verdict on any charge, it would poll the jury on the issue. At this point, the following exchange occurred:

"THE COURT: *** Was it a conscious decision on your part, Counsel, not to allow [defendant's request for counsel] to be taken out, Mr. Morrison?

MR. MORRISON [(Defense Counsel)]: No, Judge. To be honest, I assumed the State would know not to play that part it. I understand your point, that I should have filed a motion *in limine* specifically to that."

¶ 18 The jury returned a guilty verdict. The trial court polled the jury concerning the interview evidence and the following exchange occurred:

"THE COURT: Now I have to ask you something else. I'm going to read this question and I'm going to ask you each to answer either yes or no. Did the fact that the detectives' interview of defendant ended when [defendant] asked to speak with an attorney in any manner affect your verdict in this case? We'll go down the list. Mr. Khalid, Juror No. 1?

JUROR KHALID: Yes. I'm sorry. I didn't fully understand.

THE COURT: Did the fact that the detectives' interview of this defendant ended when [defendant] asked to speak with an attorney in any manner affect your verdict in this case? You still don't fully understand?

JUROR KHALID: I'm not understanding.

THE COURT: The video that we watched yesterday for about three hours, it ended—when it ended, it ended because of the fact that [defendant] asked to speak to an attorney.

JUROR KHALID: Yes.

THE COURT: All right. So my question is, did the fact that the detectives' interview of the defendant ended when [defendant] asked to speak with an attorney, did that in any manner affect your verdict in this case?

JUROR KHALID: Yes.

THE COURT: It did. So because he asked for an attorney, that helped convince you to find him guilty?

JUROR KHALID: No.

THE COURT: Well, did it affect your verdict or not?

JUROR KHALID: No."

The other jurors were polled in a similar manner and responded, "No."

¶ 19                                   C. Posttrial Proceedings

¶ 20          Shortly after trial, defendant *pro se* filed a motion alleging ineffective assistance of his trial counsel, Brad Morrison. The trial court immediately appointed conflict counsel (*Krankel* counsel) to represent defendant on his ineffective assistance claims. Defendant's *Krankel* counsel,

John Logan, filed a motion alleging Morrison was ineffective based on the following: (1) failing to move for a mistrial when an unredacted video of defendant's interview with the police was allowed to be played for the jury, (2) failing to pursue defendant's speedy trial demand, (3) failing to move to suppress evidence obtained from witness Pulliam's mobile phone, (4) failing to object to the State's introduction of evidence consisting of photographs of Regina's brain, and (5) failing to adequately cross-examine the coroner regarding the cause of Regina's injuries. The motion alleged that but for these unprofessional errors, individually and cumulatively, there is a reasonable likelihood defendant would have been acquitted. The court conducted a status hearing on March 14, 2022, indicating the motion would proceed to an evidentiary hearing. When the assistant state's attorney asked to clarify the State's role in the proceedings, the court indicated it had already performed a preliminary *Krankel* inquiry and the proceedings had moved beyond that stage, allowing the State to participate in an adversarial proceeding.

¶ 21　　　　Defendant and Morrison both testified at the hearing on the motion. Morrison indicated he may not have reviewed the video and was confused when the testimony concerning defendant's request for an attorney appeared. Trial counsel stated he did not think about suppressing those portions of the video. Trial counsel testified Pulliam may have been able to delete or alter the messages on his phone, but he failed to object to evidence preservation or chain of custody issues, instead deciding to cross-examine Pulliam and attack his credibility.

¶ 22　　　　At the conclusion of the hearing on defendant's motion, the trial court found Morrison's representation was "ineffective" and it fell below an objectively reasonable standard of representation on the issue of defendant's police interview. The court found trial counsel did not review the video before it was played to ensure it was properly redacted. However, the court indicated it was not deciding at that time whether defendant was (1) prejudiced by Morrison's

deficient performance or (2) entitled to a new trial. Instead, the court entered an order removing Morrison as defendant's counsel and appointing Logan as defendant's "post-trial counsel" going forward. The court further directed Logan to file an appropriate posttrial motion, explaining he would have the opportunity to establish prejudice at the hearing on said motion.

¶ 23    Defendant filed a "Motion for New Trial," raising similar issues as those raised in the *Krankel* motion. Defendant and Morrison testified once again at the hearing on the motion for a new trial, giving accounts that largely matched their testimony at the evidentiary *Krankel* hearing. The trial court found Morrison's performance was deficient but not prejudicial and thus denied the motion for new trial. Specifically, the court discussed the issue of prejudice in this case as follows, citing *Strickland v. Washington*, 466 U.S. 668 (1984):

> "But that's not where the inquiry ends for *Strickland*. It's prong two. You've got to win on both of them, as the State pointed out. And the language that she cited to from the caselaw is exactly the way it is, in terms of what prong two prejudice actually means. It's not just the speculation that the result might have been different; that it's not just possible the results at trial might have been different; that there's a reasonable probability that trial results would have been different.
>
> * * *
>
> Failure to do a motion *in limine*. I think it should have been done. And, as I said, Mr. Morrison gave a couple different explanations for why he did or didn't do what he did in that particular case; and I found that they were inconsistent and I found that his failure to do something to keep out that last portion was negligent, which is why I removed him from the case.
>
> But, as the State pointed out and as I mentioned, I polled the jury. And if

- 8 -

you remember when I did that—and you, obviously, weren't trial attorney—but what I did was I told the attorneys if any of the jurors say they considered it, I was gonna grant a mistrial. If the foreperson said anybody mentioned it, I was gonna grant a mistrial.

And I polled the jurors individually and I questioned the foreperson in the [presence] of Counsel. All the jurors said they never considered it at all, and the foreperson said it never came up; nobody mentioned it at all during their deliberations.

So I do think it was error to not try to keep that out. But, under the circumstances, I cannot find that it rises to the level of prejudice, short of some caselaw that says merely hearing those words in and of itself is such an egregious error that warrants reversal in and of itself. So I find that there is no evidence of prejudice here. Error in the strength of all the evidence in the case would have been harmless error."

¶ 24 The trial court later sentenced defendant to 50 years in prison.

¶ 25                                    II. ANALYSIS

¶ 26 On appeal, defendant argues the trial court erred when it granted his *Krankel* motion but failed to order the proper relief, *i.e.*, a new trial. Specifically, defendant contends "[t]he court erred because once it granted the motion alleging ineffective assistance of counsel at trial, the only proper relief was to order a new trial." Alternatively, defendant contends he is entitled to a new trial because the court erred when it denied his motion for a new trial and found defendant failed to establish he was prejudiced by Morrison's deficient performance.

¶ 27 The State responds defendant fails to persuade that a new trial must be granted

whenever a defense attorney is found to have performed deficiently, regardless of whether a finding is made on the issue of prejudice. The State further asserts the trial court erroneously concluded Morrison's performance was constitutionally deficient. Finally, the State further argues defendant failed to meet his burden of showing he was prejudiced by Morrison's failure to move, *in limine*, to redact defendant's invocation of counsel contained in the video of his police interview.

¶ 28 We conclude the trial court did not err when it (1) did not order a new trial following its finding of Morrison's deficient performance at the *Krankel* evidentiary hearing and (2) found defendant was not prejudiced by Morrison's failure to file a motion *in limine* to redact defendant's invocation of counsel contained in the video of his police interview. Accordingly, we affirm the trial court's judgment.

¶ 29 A. Applicable Law

¶ 30 Under the United States and Illinois Constitutions, every criminal defendant is entitled to effective representation at all critical stages of proceedings. See U.S. Const., amend VI; Ill. Const. 1970, art. I, § 8. "Effective assistance of counsel refers to competent, not perfect representation." (Internal quotation marks omitted.) *People v. Peel*, 2018 IL App (4th) 160100, ¶ 39. Whether defense counsel was ineffective is evaluated under the familiar two-pronged test set forth in *Strickland*. *People v. Henderson*, 2013 IL 114040, ¶ 11. Under the *Strickland* test, "a defendant must show *both* that counsel's performance was deficient *and* that the deficient performance prejudiced the defendant." (Emphases added and internal quotation marks omitted.) *Peel*, 2018 IL App (4th) 160100, ¶ 39. "To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness." *Id.* This court has explained the prejudice prong as follows:

"To establish the second prong of *Strickland*, '[a] defendant establishes

prejudice by showing that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different.' [Citation.] A 'reasonable probability' has been defined as a probability that would be sufficient to undermine confidence in the outcome of the trial. [Citation.] 'A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness.' " *Id.* ¶ 40.

¶ 31     Following a defendant's *pro se* allegations of ineffective assistance of trial counsel, the Illinois Supreme Court has established procedural steps for a trial court to follow in *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003) (noting the rule developed post-*Krankel*):

> "New counsel is not automatically required in every case in which a defendant presents a *pro se* posttrial motion alleging ineffective assistance of counsel. Rather, when a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed."

New counsel is necessary to independently evaluate the defendant's *pro se* claims and "avoid the conflict of interest that [defendant's] trial counsel would have in trying to justify his or her own actions contrary to the defendant's position." *People v. Roddis*, 2020 IL 124352, ¶ 36. "Following the appointment of new counsel (*i.e.*, *Krankel* counsel), the matter proceeds to the second stage of the *Krankel* inquiry. [Citation.] The second stage consists of an adversarial and evidentiary hearing on the defendant's claims, and during this hearing the defendant is represented by *Krankel*

counsel." *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43.

¶ 32          The Illinois Supreme Court has explained the goal of proceedings under *Krankel* is to "facilitate the trial court's *full consideration* of a defendant's *pro se* claim and thereby potentially limit issues on appeal." (Emphasis added.) *People v. Ayres*, 2017 IL 120071, ¶ 13. Furthermore, the proceedings create the necessary record for the evaluation of the defendant's claims on appeal. *Id.*

¶ 33                              B. Trial Court's Procedure

¶ 34          To sufficiently address defendant's first claim on appeal—*i.e.*, the trial court failed to provide him the correct relief at the *Krankel* hearing—we must first discuss the trial court's procedure in this case. Because of the court's familiarity with the proceedings and previous concern regarding Morrison's performance, it immediately appointed *Krankel* counsel to investigate defendant's *pro se* ineffective assistance claims (a decision with which neither of the parties nor this court takes issue). At this point, the proceedings continued as expected: *Krankel* counsel filed a motion on defendant's behalf requesting a new trial based on Morrison's alleged ineffective assistance, and the court conducted an evidentiary hearing on the motion.

¶ 35          The problem in this case lies in the trial court's failure to fully and completely address the merits of defendant's ineffective assistance claim at the conclusion of the *Krankel* hearing. At the hearing, the court determined Morrison's performance was deficient, finding he failed to properly review defendant's video interview with the police and should have filed a motion *in limine* to redact the portion of the interview showing defendant's invocation of counsel. Although the court stated Morrison was "ineffective," it specifically indicated it was not prepared decide the issue of prejudice. The court made no finding that but for Morrison's deficient performance, there is a reasonable probability the outcome of the trial would have been different.

The court ended its analysis at this point and concluded Morrison should be permanently removed from the case, with Logan to represent defendant from that point forward. Upon review of defendant's motion for a new trial following the *Krankel* hearing, the court ultimately determined Morrison's deficient performance did not prejudice defendant and denied the motion.

¶ 36 Most of the jurisprudence from *Krankel* and its progeny involves evaluating the necessity or adequacy of the preliminary inquiry—*i.e.*, the trial court's initial consideration of whether a defendant's *pro se* claims show possible neglect of the case requiring the appointment of *Krankel* counsel. There are far fewer cases discussing the procedure and remedies to be employed by the court following an evidentiary hearing on the merits of a defendant's *Krankel* motion. Accordingly, we take this opportunity to clarify the proper analytical framework for such proceedings.

¶ 37 We hold that, at an adversarial evidentiary hearing conducted pursuant to *Krankel*, a defendant is only entitled to relief upon a determination by the trial court that the defendant has established *both* prongs of the *Strickland* analysis, *i.e.*, deficiency *and* prejudice. As noted above, the purpose of proceedings conducted under *Krankel* is to facilitate "the trial court's full consideration" of a defendant's ineffective assistance claims and to limit the issues on appeal. *Id.* With these goals in mind, we conclude a "full consideration" (*id.*) means an evaluation of the defendant's claims under *Strickland*, wherein the failure to establish either prong precludes a finding of ineffective assistance. See *Peel*, 2018 IL App (4th) 160100, ¶ 40. Defendant cites no precedent, and this court has found none, stating a defendant is entitled to relief based solely on a finding of deficient performance and without regard to prejudice, with the exception of the presumed prejudice doctrine established in *United States v. Cronic*, 466 U.S. 648, 659-61 (1984) (holding prejudice may be presumed where a criminal defendant was denied counsel at a critical

stage or where appointed counsel effectively provided no representation at all).

¶ 38 Contrary to defendant's assertions on appeal, the trial court's statement at the evidentiary hearing that Morrison was "ineffective," without consideration of prejudice, was not a final determination of the merits of his claim. At that hearing, the court ended its analysis after finding defendant had established Morrison's performance was deficient. While this failure may constitute error under certain circumstances, we conclude that, in this case, the court was not required to order a new trial upon finding Morrison's performance was deficient where it did not also address the issue of prejudice. As will be discussed *infra* ¶¶ 45-49, the court ultimately addressed the prejudice prong of defendant's claim at the hearing on defendant's motion for a new trial.

¶ 39 We note there may be circumstances where the trial court determines, following an evidentiary hearing, that defense counsel's performance was deficient but not prejudicial and that new counsel should nonetheless be appointed to represent the defendant in future proceedings despite the lack of prejudice. Such a decision remains within the court's sound discretion, which the court exercised in this case with no objection. See *People v. Howard*, 376 Ill. App. 3d 322, 342-43 (2007) (discussing the trial court's discretion to appoint new counsel for a criminal defendant where necessary to "preserve the integrity of the judicial process and ensure that the proceedings appear[ed] fair to all who observe[d] them" (internal quotation marks omitted)). Moreover, we remind the parties that the remedy for a proven claim of ineffective assistance of counsel should be tailored to the injury resulting from the constitutional violation and will not always necessitate a new trial. See *People v. Patrick*, 2011 IL 111666, ¶¶ 35-37 (discussing various remedies for different ineffective assistance claims, including a new trial, a new sentencing hearing, or the reversal of the conviction).

¶ 40    Accordingly, we conclude defendant was not entitled to a new trial following the *Krankel* hearing where the trial court failed to address the prejudice prong of defendant's ineffective assistance claims.

¶ 41                              C. Prejudice Determination

¶ 42    We next consider defendant's claim the trial court erred when it denied his motion for a new trial. Specifically, defendant claims the court erroneously concluded he was not prejudiced by Morrison's failure to move, *in limine*, to redact the portions of defendant's interview with police showing his invocation of counsel. The State responds the court properly concluded defendant was not prejudiced and further argues Morrison's performance was not deficient. We conclude the court properly determined defendant was not prejudiced by Morrison's allegedly deficient performance.

¶ 43    As noted above, to prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and, but for counsel's deficient performance, there is a reasonable probability the result of the proceedings would have been different. *Peel*, 2018 IL App (4th) 160100, ¶¶ 39-40. While this court typically reviews a claim of ineffective assistance *de novo*, "if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *People v. Jackson*, 2020 IL 124112, ¶ 98. "Manifest error is error that is clearly evident, plain, and indisputable." *Id.* Furthermore, *Strickland* also dictates that a reviewing court is to consider the totality of the evidence before the factfinder when considering the issue of prejudice. *Strickland*, 466 U.S. at 695. Specifically, the *Strickland* court explained as follows:

"Some of the factual findings will have been unaffected by the errors, and factual

findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695-66.

¶ 44                              1. *Reliance on the Jury Poll*

¶ 45         We feel compelled to address the trial court's reliance on its jury poll when considering the issue of prejudice. The practice of polling the jury is defined as "asking individual jurors about their votes, usu[ally] after a verdict is returned but before the jurors are discharged." Black's Law Dictionary (12th ed. 2024). Generally, " '[t]he purpose of the poll of a jury is to determine whether the verdict has in fact been freely reached and remains unanimous.' " *People v. Wheat*, 383 Ill. App. 3d 234, 237 (2008) (quoting *People v. Ellis*, 93 Ill. App. 3d 981, 985, (1981)). While such a poll is typically conducted regarding the validity of the verdict, the Second District, citing this court's decision in *People v. Black*, 314 Ill. App. 3d 276, 280 (2000), has recognized it is within the trial court's discretion to poll the jury regarding "nonverdict-related issues," such as whether the jurors consumed potentially prejudicial media concerning the case. *Wheat*, 383 Ill. App. 3d at 238. However, Illinois Rule of Evidence 606(b) (eff. Jan. 1, 2011) provides as follows:

> "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify
> as to any matter or statement occurring during the course of the jury's deliberations
> or to the effect of anything upon that or any other juror's mind or emotions as
> influencing the juror to assent to or dissent from the verdict or indictment or

concerning the juror's mental processes in connection therewith. But a juror may testify (1) whether any extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form."

Upon review of Illinois caselaw involving polling practices, this court has found no instance where a trial court, *sua sponte*, polled jury members as to whether they considered any particular piece of evidence that was admitted at trial in reaching their verdict. Although the trial court is allowed discretion in its manner of polling, we cannot endorse a polling practice, such as the one employed in this case, that resulted in jurors "testifying" regarding what evidence they considered and whether it influenced their decision "to assent to or to dissent from the verdict" in contravention of Rule 606(b). To avoid invading the province of the jury, it appears to this court that polling issues should likely be limited to those factors enumerated in Rule 606(b) and "whether the verdict has in fact been freely reached and remains unanimous." (Internal quotation marks omitted.) *Wheat*, 383 Ill. App. 3d at 237.

¶ 46        Putting aside the arguable impropriety of the trial court's poll—an issue that has not been raised by the parties on appeal—we nonetheless conclude the court's reliance on the poll in considering the issue of prejudice was misplaced here. To begin, the form of the court's poll did not actually address the heart of the issue, which was the potentially prejudicial effect of allowing the jury to hear defendant's invocation of counsel and the officers' comments regarding the necessity of an attorney if he were innocent. The prejudicial effects associated with the jury hearing this are that it may (1) incorrectly impute a consciousness of guilt associated with invoking the constitutional right to counsel and (2) contradict the presumption of innocence—a principle in our

- 17 -

criminal justice system considered so fundamental that trial courts are required to ask jurors whether they both understand and accept it during *voir dire* (see Ill. S. Ct. R. 431(b) (eff. July 1, 2012)). Here, during its poll, the court asked jurors whether the fact "the video ended" when defendant asked for an attorney affected their verdict. The form of this question was not sufficient to gauge whether defendant's invocation of counsel or the officers' comments thereafter impacted any individual juror's decision because the emphasis was on the video ending and not the events that precipitated it. Accordingly, we decline to consider the results of the court's poll in determining whether its ultimate decision on the issue of prejudice was manifestly erroneous.

¶ 47                            2. *Ultimate Prejudice Determination*

¶ 48            Despite the trial court's improper reliance on its jury poll, we ultimately conclude the determination defendant was not prejudiced by trial counsel's failure to seek the redaction of his police interview video was not manifestly erroneous. Even if defendant's trial counsel had successfully argued a motion *in limine* to redact the portion of the video wherein defendant invokes his right to counsel, it was not a clear or obvious error for the court to conclude there was no reasonable probability defendant would have been acquitted at trial. Specifically, the court noted the strength of the State's case precluded a finding of prejudice here, and we agree. D.P. testified defendant and Regina argued the evening before Regina died about a man named "Nate." She recalled defendant striking Regina with a broomstick and beating her all over her body. D.P. further testified that after Regina attempted to get in her bed, defendant dragged her out of the room by her feet and repeatedly struck her in the face with his fists. Moreover, Pulliam testified defendant called him numerous times and threatened to harm him if he did not stay away from Regina. During one voicemail, he heard defendant yelling profanities in the background while Regina made "gurgling" sounds, as if she were choking. Photographs showed the knuckles on defendant's right

hand were swollen, and the forensic pathologist testified Regina died from blunt force trauma to the head. The forensic pathologist noted Regina's forehead and nose had abrasions caused by "a linear object" and that she had suffered multiple blows to the front, back, and both sides of her head and had contusions all over her arms and legs. This was consistent with D.P.'s account of defendant beating Regina with a broomstick. Additionally, the jury was properly instructed that (1) their verdict must be based on the evidence alone, (2) defendant was presumed to be innocent, and (3) it was the State's burden to prove defendant guilty beyond a reasonable doubt. Based on this plethora of eyewitness testimony, circumstantial evidence, and forensic evidence, it was not a clear or obvious error for the court to conclude there was no reasonable probability defendant would have been acquitted but for trial counsel's failure to seek the redaction of defendant's police interview.

¶ 49 We conclude the trial court's determination defendant failed to establish prejudice was supported by the record and did not constitute "clearly evident, plain, and indisputable" error based on the strength of the State's evidence that was not impacted by counsel's allegedly deficient performance. Because this lack of prejudice was fatal to defendant's ineffective assistance claim, the court properly denied defendant's request for a new trial on those grounds. Accordingly, we need not consider the State's argument Morrison's performance was not deficient.

¶ 50        III. CONCLUSION

¶ 51 For the reasons stated, we affirm the trial court's judgment.

¶ 52 Affirmed.

*People v. Boose*, 2025 IL App (4th) 231467

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 15-CF-490; the Hon. Robert Randall Wilt, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, Drew A. Wallenstein, and Jeffrey Bruce Kirkham, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | J. Hanley, State's Attorney, of Rockford (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |